**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RUBEN TALAMANTES,
              *Plaintiff-Appellant,*

v.

RAY LEYVA; GILBERT AGUILAR; LEE
BACA; R. DOYLE CAMPBELL;
COUNTY OF LOS ANGELES; LOS
ANGELES COUNTY SHERIFF'S
DEPARTMENT; JOHN L. SCOTT;
DENNIS A. CONTE; JOHN VANDER
HORCK; DENNIS H. BURNS;
KENNETH J. BRAZILE; LEE C.
MCCOWN; JOHN H. CLARK,
              *Defendants-Appellees.*

No. 06-55939

D.C. No.
CV-04-06792-
GAF(Ex)

OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted
January 16, 2009—San Francisco, California

Filed August 6, 2009

Before: J. Clifford Wallace, Jerome Farris and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Wallace

## COUNSEL

Jeff Dominic Price, Santa Monica, California, for the plaintiff-appellant.

John J. Collins, Tomas A. Guterres, Douglas Fee (argued), and Catherine Mason-Mathers, Law Offices of Collins, Collins, Muir & Stewart, LLP, South Pasadena, California, for the defendants-appellees.

## OPINION

WALLACE, Senior Circuit Judge:

Talamantes appeals from the district court's judgment dismissing his action for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a). We have jurisdiction over Talamantes' timely filed appeal pursuant to 28 U.S.C. § 1291. We reverse the judgment of dismissal and remand to the district court.

## I.

Talamantes, who was held in the custody of the County of Los Angeles Sheriff's Department from April 11, 2003 until June 5, 2003, filed a federal complaint alleging that certain events occurred during his incarceration, which violated his constitutional rights. The complaint was filed long after his release from jail.

Talamantes was initially incarcerated in the Men's Central Jail, and he alleges that while he was there, he was attacked by other inmates. He was then placed in administrative segregation and housed in a single-man cell, during which time he alleges that he was deprived of food and toilet paper. He alleges that on May 9, 2003, prison officials allowed two inmates to enter his cell and attack him with inmate-manufactured knives, while the officials watched. Talamantes was subsequently transferred to the Twin Towers Correctional Facility for mental observation, and then moved to a medical unit, where he alleges that medical staff failed to diagnose properly and treat his injuries. Soon afterwards, on June 5, 2003, Talamantes was released from jail.

While Talamantes was in custody, his father contacted Lieutenant Aguilar, the watch commander for the Men's Central Jail, and complained that his son had been involved in an altercation with deputies, and had suffered some sort of

trauma. Talamantes' father also expressed concern about his son's mental condition. Aguilar conducted an investigation and issued a written "Watch Commander's Service Comment Report," concluding that "there is no merit or basis for Mr. Talamantes' questions about his son's stay in custody." The report recommended that no further action be taken regarding Talamantes' father's inquiry. Neither Talamantes' father nor Talamantes pursued the grievance any further within the jail system.

The County of Los Angeles Sheriff's Department had an administrative appeals process in place at the time Talamantes was incarcerated and following his release. The "Custody Division Manual" provided a written procedure for handling inmate complaints. Inmates first filed an "Inmate Complaint Form." If the initial complaint was denied, the inmates could appeal the decision. The Custody Division Manual also provided a process for reviewing complaints from released inmates. Talamantes does not allege that he participated in this grievance process, either during his incarceration or after his release.

Instead, on August 16, 2004, over a year after his release from custody, Talamantes filed a complaint in the district court pursuant to 42 U.S.C. § 1983, alleging that his rights under the Eighth and Fourteenth Amendments had been violated while he was in custody. Defendants moved to dismiss Talamantes' complaint on the ground that he failed to exhaust administrative remedies, as required by the Prison Litigation Reform Act (PLRA). The district court held that Talamantes "must exhaust his administrative remedies before filing an action under Section 1983 relating to his conditions of confinement, even if [he] is no longer incarcerated." Because Talamantes failed to meet this exhaustion requirement, the district court granted defendants' motion to dismiss.

## II.

We review the district court's legal conclusions in its dismissal of a case for failure to exhaust administrative remedies

*de novo. Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). We review its factual findings for clear error. *Id*. Interpretation of the PLRA is a question of law which we review *de novo. Page v. Torrey*, 201 F.3d 1136, 1138-39 (9th Cir. 2000).

**[1]** The central issue raised on appeal is whether a person no longer incarcerated must exhaust administrative remedies pursuant to the PLRA as a prerequisite to filing an action in the district court relating to the conditions of his incarceration. This issue is one of first impression in this circuit.

**[2]** "It is well settled that, in a statutory construction case, analysis must begin with the language of the statute itself; when the statute is clear, 'judicial inquiry into [its] meaning, in all but the most extraordinary circumstance, is finished.' " *United States v. Carter*, 421 F.3d 909, 911 (9th Cir. 2005), *quoting Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992). The PLRA provides that: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, *by a prisoner confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).

**[3]** The language of the statute is plain and unambiguous — the exhaustion requirement applies only to "prisoners." A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Thus, a person not "incarcerated or detained" in this manner at the time the action is filed is not a "prisoner" for purposes of the statute, and therefore, not subject to the exhaustion requirement.

We relied on the plain language of the PLRA in *Page*, where we held that a person civilly committed under Califor-

nia's Sexually Violent Predators Act is not subject to the PLRA's exhaustion of remedies requirement. 201 F.3d at 1137. We explained that "it is clear from the express language of these provisions that [the requirement to exhaust administrative remedies] appl[ies] only to 'prisoners.' " *Id.* at 1139. We therefore held that "only individuals who, *at the time they seek to file their civil actions*, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of 42 U.S.C. § 1997e." *Id.* at 1140 (emphasis added). While *Page* concerned the terms of the PLRA as applied to a person under civil commitment, we will also adhere to the plain language of the statute as applied to a person who has been released from prison altogether.

**[4]** Citing the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006), defendants argue that there are policy reasons for requiring all individuals who bring an action regarding prison conditions to exhaust administrative remedies, regardless of whether they are currently incarcerated. Although many policies support the PLRA's exhaustion requirement with respect to the currently imprisoned, general policies—even if they could be applied to former prisoners— do not trump the plain language of the statute. In a recent case interpreting the PLRA's exhaustion requirements, the Supreme Court stated that "[n]o mere omission . . . which it may seem wise to have specifically provided for, justif[ies] any judicial addition to the language of the statute." *Jones v. Bock*, 549 U.S. 199, 216-17 (2007), *quoting United States v. Goldenberg*, 168 U.S. 95, 103 (1897). If Congress had intended for all individuals, including former prisoners, who wished to bring an action regarding prison conditions to exhaust all available administrative remedies, it could have expressed that intention in the statute. Congress did not do so.

**[5]** Therefore, we join our sister circuits in holding that only those individuals who are prisoners (as defined by 42 U.S.C. § 1997e(h)) at the time they file suit must comply with the exhaustion requirements of 42 U.S.C. § 1997(a). *See, e.g.*,

*Norton v. City of Marietta*, 432 F.3d 1145, 1149-51 (10th Cir. 2005) (per curiam); *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002); *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) (per curiam); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998).

**[6]** In this case, it is undisputed that Talamantes was released from custody over a year before filing his action in federal court. Therefore, he was not required to exhaust administrative remedies before filing his action.

## III.

On appeal, Talamantes raised two additional issues: (1) whether defendants adequately raised the affirmative defense of exhaustion in the district court; and (2) whether defendants adequately provided Talamantes the opportunity to exhaust remedies. Because Talamantes was not required to exhaust administrative remedies, we need not decide these issues.

**[7]** The district court erred in dismissing Talamantes' action for failure to exhaust administrative remedies. Therefore, we reverse and remand this case to the district court.

**REVERSED AND REMANDED.**