**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ERINEO CANO, AKA Eddie Cano, *Plaintiff-Appellant*, | No. 10-17030 |
| | D.C. No. 2:07-cv-02456-ROS |
| v. | |
| NICOLE TAYLOR, Psychologist; SUSAN KAZ, Psychologist; MEREDITH MITSIFER, Psychologist; RALPH MERTENS, Psychologist; DORA B. SCHRIRO, Warden, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, Senior District Judge, Presiding

Argued and Submitted
December 3, 2013—San Francisco, California

Filed January 14, 2014

Before: Barry G. Silverman, Consuelo M. Callahan,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Callahan;
Dissent by Judge Silverman

## SUMMARY[*]

### Prisoner Civil Rights

The panel affirmed the district court's summary judgment and denial of appointment of counsel and vacated in part the district court's dismissal for failure to exhaust administrative remedies under the Prison Litigation Reform Act and remanded in a 42 U.S.C. § 1983 action brought by a former prison inmate who alleged deliberate indifference to his mental health needs, and violations of his right to freely exercise his religious beliefs and have access to the courts.

The panel determined that plaintiff's claims for injunctive and declaratory relief were mooted by his release from prison. The panel held that plaintiff's claim regarding inadequate medical care amounted to a difference of opinion as to his medical treatment, which was not actionable. The panel therefore affirmed the district court's summary judgment on that claim. The panel also affirmed the district court's denial of plaintiff's request for appointment of counsel, determining that plaintiff was unlikely to succeed on the merits, and could adequately present his claims pro se.

The panel held that the district court incorrectly dismissed the religious freedom and access to the courts claims as unexhausted under the Prison Litigation Reform Act. The panel held that federal claims that arise as a cause of action prior to the filing of the initial complaint may be added to a complaint via an amendment, as long as they are

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

administratively exhausted prior to the amendment. Therefore, for purposes of the exhaustion requirement, the date of the First Amended Complaint's filing is the proper yardstick. The panel remanded for further proceedings as to those claims.

Dissenting as to Part II(D), Judge Silverman stated that under Ninth Circuit precedent a prisoner may not file first, then exhaust later. Judge Silverman would therefore affirm the district court in all respects.

---

## COUNSEL

Kelly A. Kszywienski (argued) and Andrew M. Jacobs, Snell & Wilmer L.L.P., Phoenix, Arizona, for Plaintiff-Appellant.

Claudia Acosta Collings (argued), Assistant Attorney General, Tucson, Arizona, for Defendants-Appellees.

---

## OPINION

CALLAHAN, Circuit Judge:

Erineo Cano, a former prison inmate, appeals from the district court's judgment in his 42 U.S.C. § 1983 action alleging deliberate indifference to his mental health needs in violation of the Eighth Amendment (count I), and violations of his right to freely exercise his religious beliefs and to have access to the courts, in violation of the First and Fourteenth Amendments (counts II and III). The district court granted summary judgment on count I, and dismissed counts II and III for failure to exhaust administrative remedies, pursuant to

the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). On appeal, Cano challenges both decisions, as well as the district court's rulings denying him appointment of counsel and in forma pauperis ("IFP") status.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse and remand in part.

## I.

Cano filed his original district court complaint on December 4, 2007. Cano alleged that while an inmate in a facility run by the Arizona Department of Corrections ("AZ DOC"), he did not receive proper medical care for his mental illness, with the result that he became suicidal. Although he was seen regularly by mental health care professionals at the prison where he was housed, he was unhappy with the quality of care he was offered, and disagreed with the types of medications he was prescribed. The record also indicates a diagnosis of malingering and violence, the latter of which (along with non-compliance and his own personal requests) prohibited him from actively participating in the mental health program.

On May 29, 2008, Cano filed a "Motion for Leave to Add Claims" and a First Amended Complaint ("FAC"). The FAC added counts II and III for alleged violations of Cano's First and Fourteenth Amendment rights. Count II claimed that Cano's freedom of religion was violated because kosher food was not made available to him.[1] Count III argued that he was

---

[1] Plaintiff's FAC stated that "Plaintiff's religion is premised upon a fundamentalist approach to the Old Testament. While Plaintiff does not consider himself 'Jewish,' he does adhere to teachings and practices that

denied meaningful access to the courts because a self-help litigation manual he had previously utilized had been removed from the prison library, and "no other self-help litigation manual ha[d] been substituted."

On September 18, 2009, defendant Schriro, Director of the AZ DOC, filed a 12(b) motion to dismiss counts II and III as barred by 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies. Cano argued that he exhausted administrative remedies.

The district court, however, dismissed counts II and III without prejudice on the grounds that the administrative appeals submitted by Cano as to those counts were dated after the filing date of the initial complaint. Thus, although the FAC was filed after the administrative appeals for counts II and III were allegedly exhausted, the court, using the date of the original complaint, found that counts II and III were not administratively exhausted as required under the PLRA. Because it found the date of the original complaint to be dispositive of the exhaustion issue, the district court did not reach the question of whether Cano, in fact, had followed proper prison procedures in pursuing administrative remedies as to counts II and III.

Cano filed a timely notice of appeal, and the Appellate Commissioner appointed counsel for purposes of this appeal only. During the pendency of this appeal, Cano was released from prison.

---

are part of the Jewish faith. . . . Plaintiff has been forced to eat unclean and unholy foods that are forbidden by his religion."

## II.

## A.

Appellees argue that Cano's release from prison renders his claims for injunctive and declaratory relief moot.

We have held that a prisoner's claims for punitive and compensatory relief may remain viable after his release. *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095–1096 (9th Cir. 2004) ("If [the plaintiff] is entitled to collect damages in the event that it succeeds on the merits, the case does not become moot even though declaratory and injunctive relief are no longer of any use.") (quoting *Z Channel Ltd. P'ship v. Home Box Office, Inc.*, 931 F.2d 1338, 1341 (9th Cir. 1991)); *see also Rhodes v. Robinson*, 408 F.3d 559, 566 n.8 (9th Cir. 2005) ("[I]t is firmly established that claims for monetary damages survive a prisoner's release from the officers' custody.").[2]

Here, Cano sought not only preliminary and permanent injunctions, but also declaratory relief and punitive and compensatory damages. Consistent with case law, Cano's claims for injunctive and declaratory relief are mooted by his release from prison, but his other claims may not be.

---

[2] *See also Johnson v. Doughty*, 433 F.3d 1001, 1004 n.3 (7th Cir. 2006) (prisoner's Eighth Amendment suit for deliberate indifference to his medical needs was not mooted by his release from custody; although injunction was no longer an available remedy, his damages claims were live issues.); *and Kuperman v. Wrenn*, 645 F.3d 69, 73 (1st Cir. 2011) (reversing on mootness because of the existence of claimed nominal and punitive damages, without deciding whether compensatory damages were available under the PLRA).

**B.**

At best, Cano's claim regarding inadequate medical care amounts to a difference of opinion as to his medical treatment, which is not actionable. The Supreme Court has held that "to show an Eighth Amendment violation a prisoner must typically show that a defendant acted, not just negligently, but with 'deliberate indifference.'" *Minneci v. Pollard*, 132 S. Ct. 617, 625 (2012). In the instant case, there is no evidence that Cano's medical needs were treated with deliberate indifference.

Rather, the record indicates that the Defendants were very responsive to Cano's complaints. The record is replete with health need request forms filed by Cano and the record indicates that Cano was seen by mental health care employees regularly for his complaints. For example, Cano was seen:

- sixty-three times by psychologist Taylor in a sixteen-month period;

- thirty-six times by psychologist Mertens between 2007 and 2008;

- by three psychiatrists and ten psychologists or psychology associates a total of approximately 106 times in 2007;

- by one psychiatrist and fifteen psychologists or psychology associates a total of approximately 232 times in 2008;

- by two psychiatrists and nine psychologists or psychology associates over 100 times in 2009;

- by one psychiatrist and two psychologists five times in 2010 prior to his release in February of that year.

Further, there is a great deal of evidence that his suicide threats were manipulative in nature. Cano was placed on suicide watch 15 times during 16 months as a result of his statements that he was thinking of harming himself. The record indicates that during follow-up visits to his cell, Cano's chief complaint was boredom, and he sought a television and radio in his cell. For instance, Cano repeatedly stated that he "need[ed] a change of scenery" or that he "needed a tv or radio for diversion. That is what I would have gotten out of the mental health program."

Further, Cano was an uncooperative and difficult patient. The record indicates that Cano repeatedly and regularly exhibited violent behaviors and therefore could not be placed in a lower custody part of the prison (a unit other than the Special Management Unit ("SMU") or the pod in the mental health unit) because he was a danger to himself and/or others. For example, the prison's daily cell-front visit logs show statements by Cano such as: "I feel like harming someone else."; "You f- with me, I'll get you. You f- with me, I'll mess you up."; "I'm feeling angry. I am not ready to go back today."; "Get the f- away from my face."; "I had an episode yesterday - I punched my bunk for 20 minutes."; and "I'll cut your f-ing head off." There are also 28 documented refusals by Cano to take his medication in the record.[3] There are countless forms in the record demonstrating follow-up by

---

[3] It is unclear if these represent all instances of Cano's refusal, or whether there were more. Many of these medication logs were signed by Cano; others were not, because in some cases he refused to interact with those offering medication, instead responding with epithets and profanity.

staff, including cell-front visits to check on Cano's mood, continuous progress reports, psychiatric follow-ups, mental health treatment plans, and watch discharge summaries.

In short, the record indicates that prison mental healthcare professionals were incredibly responsive to Cano's needs and no reasonable trier of fact could find that there was deliberate indifference to Cano's complaints. Therefore, the district court's grant of summary judgment on count I is affirmed.[4]

## C.

Cano also appeals the district court's denial of his request for appointed counsel. The decision to appoint counsel in a civil suit is one of discretion and a district court's determination will be overturned only for abuse of that discretion. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). A district court must determine whether a) there is a likelihood of success on the merits; and b) the prisoner is unable to articulate his claims in light of the complexity of the legal issues involved. *Id.* None of these factors is dispositive; rather they must be considered cumulatively. *Id.*

In the instant case, there are no exceptional circumstances, because Cano is unlikely to succeed on the merits, and Cano has been able to articulate his legal claims in light of the complexity of the issues involved. Therefore, we affirm the district court's denial of Cano's request for counsel.

---

[4] Appellees also argue that Cano's Count I claims are barred because § 1997e(e) bars recovery for complaints of mental or emotional injury where no physical injury is alleged. Since the deliberate indifference standard is not met, we need not reach this issue.

Cano argues that the district court, in granting summary judgment as to count I and denying the appointment of counsel, improperly relied on *Hutchinson v. United States*, 838 F.2d 390, 393 (9th Cir. 1988), for the proposition that it was incumbent on him "to provide an affidavit or deposition of an expert to establish the standard of care." It appears that the district court may have overstated the need for an expert, but if error, this was harmless error because the district court properly held that Cano's "conclusory allegations as to the adequacy of care or his worsening mental condition are insufficient to defeat summary judgment." The district court correctly noted that the copies of medical records that Cano provided do not make a prima facie case for his argument.

Cano also argues that denial of appointed counsel was improper because the district court addressed the merits of Defendants' motion for summary judgment before it addressed his likelihood of success (and thus whether or not he should be appointed counsel). The basis for Cano's contention seems to be that the district court's denial of summary judgment has one paragraph regarding Cano's request for appointed counsel, which appears at the very end of the order. This argument lacks merit. The placement of the language denying counsel after the language discussing summary judgment, does not establish that the district court considered appointment of counsel only after it ruled on summary judgment. Further, it does not matter how the district court addressed the merits of Cano's complaint, as long as it fairly considers Cano's claims.

**D.**

We review the district court's dismissal of claims for failure to exhaust administrative remedies de novo but review

factual determinations for clear error. *Sapp v. Kimbrell*, 623 F.3d 813, 821 (9th Cir. 2010).

The PLRA is intended to eliminate frivolous lawsuits, but not to eliminate the ameliorative effect achieved by valid constitutionally-based challenges. *See Woods v. Carey*, 722 F.3d 1177, 1182–1183 (9th Cir. 2013).[5] The PLRA requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

---

[5] In *Woods v. Carey*, the Ninth Circuit summed up the policy goals of the PLRA as follows:

> Congress enacted the PLRA to deter frivolous prisoner lawsuits that needlessly wasted judicial resources and to provide for their dismissal at an early stage. It did so in part by seeking to limit the number of prisoner claims that are filed.
>
> . . . .
>
> Congress did not, however, intend to discourage the collection of awards in those comparatively few meritorious cases in which the district court had found that the prisoner's constitutional rights had been violated and that the prisoner was entitled to collect damages for that violation. The majority of these actions result in low-damage awards for the prisoner, but can affect substantial change in the prison conditions or prisoner treatment.

722 F.3d 1177, 1182–1183 (9th Cir. 2013) (*internal citations omitted*).

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). *See also Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). This requirement is in keeping with the main purpose of the PLRA, which was to address the overwhelming number of suits brought by prisoners. 141 Cong. Rec. S14413 (daily ed. Sept. 27, 1995).

The Ninth Circuit has explained that Congress purposefully made exhaustion a precondition to suit, rather than to judgment, and that this was done with the goal of affording corrections officials the opportunity to address complaints internally. *McKinney v. Carey*, 311 F.3d 1198, 1200–1201 (9th Cir. 2002) (per curiam). In some cases, this may obviate the need for a suit; in others, it would filter out frivolous claims or clarify the record for those cases that proceed to federal court. *Id.* The PLRA's exhaustion requirement, the *McKinney* panel explained, furthers these Congressional objectives. *Id.*

While a prisoner is required to exhaust administrative remedies prior to filing suit, "'[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" *Albino v. Baca*, 697 F.3d 1023, 1030 (9th Cir. 2012) (*internal citations omitted*). "The failure to exhaust administrative remedies is an affirmative defense on which the defendant bears the burden of proof." *Akhtar v. J. Mesa*, 698 F.3d 1202, 1210 (9th Cir. 2012).

Not long ago, we held that a prisoner may file an amended complaint and add new claims where the additional cause of action arose after the initial filing, as long as he has

exhausted administrative remedies as to those additional claims before filing the amended filing. *See Rhodes Robinson*, 621 F.3d 1002 (9th Cir. 2010); *see also Akhtar*, 698 F.3d at 1210. In *Akhtar*, we stated:

> We have held that "a prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation." If, however, a plaintiff files an amended complaint adding new claims based on conduct that occurred after the filing of the initial complaint, the plaintiff need only show that the new claims were exhausted before tendering the amended complaint to the clerk for filing.

*Id.* (*citing McKinney v. Carey*, 311 F.3d at 1199; *also citing Rhodes*, 621 F.3d at 1007).

Here, we have a slightly different factual situation, because counts II and III arose as causes of action prior to the filing of the initial complaint, but were (allegedly properly) exhausted between the filing of the initial complaint and the FAC, when they were added. Following the logic of *Rhodes* and *Akhtar*, we hold that claims that arose as a cause of action prior to the filing of the initial complaint may be added to a complaint via an amendment, as long as they are administratively exhausted prior to the amendment.

In *Rhodes*, we explained that Ninth Circuit case law interpreting the PLRA

> must be read and applied in the larger context of the pleading framework established by the

Federal Rules of Civil Procedure. As a
general rule, when a plaintiff files an amended
complaint, [t]he amended complaint
supercedes the original, the latter being
treated thereafter as non-existent. Nothing in
the PLRA's exhaustion requirement creates an
exception to this basic premise of our
jurisprudence on pleadings.

*Rhodes*, 621 F.3d at 1005 (*internal quotation marks and citations omitted*). Therefore, for purposes of the exhaustion requirement, the date of the FAC's filing is the proper yardstick.

Moreover, a district court's discretion to allow the addition of a new claim in an amended complaint should not be curtailed where it is not required by law or statute. Nothing in the PLRA or the Ninth Circuit's reasoning in *Akhtar* bars the use of the FAC. *See Rhodes*, 621 F.3d at 1005 ("In drafting the PLRA, 'when Congress meant to depart from the usual procedural requirements, it did so expressly.' . . . The PLRA 'does not—explicitly or implicitly—justify deviating from the usual procedural practice beyond the departures specified by the PLRA itself.'") (*internal citations omitted*).

Allowing counts II and III to proceed as part of the FAC serves the policies underlying the PLRA. The purpose of the PLRA is to discourage frivolous prisoner lawsuits and thus reduce resulting costs on society by decreasing the burden on the courts. *See Madrid v. Gomez*, 190 F.3d 990, 996 (9th Cir. 1999). In this case, forcing the plaintiff to file a separate suit regarding his First Amendment freedom of religion and access to the courts claims would not further the policy goals

of the PLRA, because plaintiff could proceed to file those claims as a separate action (the district court having dismissed them without prejudice).

Accordingly, the dismissal of counts II and III is vacated because it was based on the determination that Cano had not exhausted his administrative remedies prior to the filing of his initial complaint, rather than his amended complaint.

Because the district court focused on when the grievances in counts II and III arose, rather than whether and when the administrative remedies were exhausted, the grant of the motion to dismiss must be vacated. However, because the district court did not address Cano's attempts to exhaust his administrative remedies, nor did it address whether his attempts were procedurally unsound or whether they complied with the internal deadlines of the AZ DOC, we remand for consideration of this issue.[6]

---

[6] Appellees have also raised the argument that Cano did not follow proper Arizona State Department of Corrections procedure in exhausting counts II and III. If this were so, it would indeed be a valid cause for dismissal. The Supreme Court has held that:

> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

*Woodford v. Ngo*, 548 U.S. 81, 91 (2006).

## III.

Cano's claims for injunctive and declaratory relief are mooted by his release, but his claims for other damages are not. We affirm summary judgment in favor of Defendants on count I, as the record clearly indicates that Appellees have adequately responded to Cano's medical needs, even though Cano has a difference of opinion with Appellees as to proper medication and treatment. We also affirm the denial of Cano's motion for appointment of counsel, as Cano's claim is unlikely to succeed on the merits, and he can adequately present his claims pro se.

We vacate and remand the district court's dismissal of counts II and III. The district court incorrectly dismissed counts II and III because they arose prior to the filing of the initial complaint even though the administrative remedies were allegedly exhausted prior to the filing of the first amended complaint. This exhaustion ruling is not required by the PLRA nor consistent with the spirit of Ninth Circuit case law. Rather, following *Rhodes*, 621 F.3d 1002, we hold that federal claims which are added to a suit via an amendment and which are administratively exhausted prior to that amendment, comply with the PLRA's exhaustion requirement. On remand, the district court may address Appellees' contentions that Cano has not exhausted his administrative remedies for counts II and III and whether Cano's attempt to file his FAC should be denied for some other reason.

**AFFIRMED in part** (as to the summary judgment on count I and the denial of appointed counsel) and **VACATED** and **REMANDED in part** (as to the dismissal of counts II and III).

SILVERMAN, Circuit Judge, dissenting as to Part II(D):

*Akhtar v. Mesa*, 698 F.3d 1202 (9th Cir. 2012) held that a prisoner may not file first, then exhaust later. Quoting *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002), the *Akhtar* court reiterated that "a prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation." *Id.* at 1210.

Yet that is exactly what Cano did here. He filed an amended complaint asserting claims that existed before the original complaint was filed, but were not administratively exhausted until after that complaint was filed. In other words, he did precisely what *Akhtar* and *McKinney* say he is not permitted to do – exhaust during the course of the litigation. This is not a situation as in *Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010) where a plaintiff sought to amend his complaint to raise new claims that did not arise until after the original complaint was filed. In that circumstance, "[i]f . . . a plaintiff files an amended complaint adding new claims *based on conduct that occurred after the filing of the initial complaint*, the plaintiff need only show that the new claims were exhausted before tendering the amended complaint to the clerk." *Akhtar* at 1210 (emphasis added).

The purpose behind the requirement of exhaustion of administrative remedies would be completely undermined if a plaintiff can sue first, then exhaust on the fly. But even if one thinks that *Akhtar* and *McKinney* were wrongly decided, we are duty bound to follow them, just as the district court correctly did. *See United States v. Orm Hieng*, 679 F.3d 1131, 1139 (9th Cir. 2012) ("As a three-judge panel, we are bound by circuit precedent unless the United States Supreme Court or an en banc court of our circuit has undercut the

theory or reasoning underlying the prior circuit precedent in
such a way that the cases are clearly irreconcilable.")
(internal quotations omitted).

I would affirm the district court in all respects.