**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHARLIE DAVID JACKSON, *Plaintiff-Appellant*, | No. 15-15547 |
| v. | D.C. No. 3:12-cv-02516-CRB |
| R. FONG; K. FREIHA; P. BURTON, *Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, Senior District Judge, Presiding

Argued and Submitted May 17, 2017
San Francisco, California

Filed August 31, 2017

Before: Sidney R. Thomas, Chief Judge, Mary H.
Murguia, Circuit Judge, and Jon P. McCalla,[*]
District Judge.

Opinion by Judge Murguia;
Concurrence by Judge McCalla

---

[*] The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

# SUMMARY[**]

**Prisoner Civil Rights**

The panel reversed the district court's summary judgment dismissal of a prisoner's action under 42 U.S.C. § 1983, and remanded for further proceedings.

Plaintiff filed his lawsuit while a prisoner at San Quentin State Prison in California. After his release, he amended his complaint with leave of court. The district court then granted summary judgment to the defendants based on plaintiff's failure to exhaust his administrative remedies as a "prisoner" under the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a).

The panel held that a plaintiff who was in custody at the time he initiated his suit but was released from custody when he filed his amended operative complaint is not a "prisoner" subject to a Prison Litigation Reform Act's exhaustion defense. Accordingly, in this case plaintiff was not a prisoner when he filed his operative third amended complaint, and the district court erred in granting summary judgment to defendants.

Concurring in the judgment, Judge McCalla stated that the district court improperly determined that plaintiff had not exhausted his claims, not because the Prison Litigation Reform Act was inapplicable to his post-release third amended complaint, but because plaintiff's failure to exhaust was excusable under § 1997e(a). Judge McCalla would find

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that plaintiff exhausted his available administrative remedies when the California Department of Corrections and Rehabilitation closed his still-pending appeal due to his release.

## COUNSEL

Gregory S. Bok (argued), Carolyn S. Small, Jessica R. Culpepper, Daniel R. Adler, and Blaine H. Evanson, Gibson Dunn & Crutcher LLP, Los Angeles, California, for Plaintiff-Appellant.

Alicia A. Bower (argued), Deputy Attorney General; Thomas S. Patterson, Supervising Deputy Attorney General; Jonathan L. Wolff, Senior Assistant Attorney General; Office of the Attorney General, San Francisco, California, for Defendants-Appellees.

## OPINION

MURGUIA, Circuit Judge:

This appeal arises from a prison's alleged indifference to an inmate's medical needs. The plaintiff, Charles "Charlie" Jackson, first filed suit while a prisoner at San Quentin State Prison in California. After his release, Jackson amended his complaint with leave of court. The district court then granted summary judgment to the defendants based on Jackson's failure to exhaust his administrative remedies as a "prisoner" under the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a). The question on appeal is whether Jackson is subject to the PLRA's exhaustion requirement because he initiated his suit when he was a

prisoner, or if instead Jackson is not subject to the exhaustion requirement because he filed the operative complaint after his release from custody.  We hold that a plaintiff who was in custody at the time he initiated his suit but was free when he filed his amended operative complaint is not a "prisoner" subject to a PLRA exhaustion defense.  We therefore reverse and remand.

I.

In May 2010, Jackson became a prisoner at San Quentin State Prison (San Quentin) in San Quentin, California.  He was serving a term for second-degree burglary.  On June 11, 2012, while still incarcerated in San Quentin, Jackson filed a pro se prisoner complaint in federal district court challenging the conditions of his confinement under 42 U.S.C. § 1983.  Unless otherwise stated, the following facts assume the truth of the allegations in Jackson's operative third amended complaint, construed liberally.

In 2010, suffering from mental health problems,[1] Jackson met with a series of prison doctors (the Doctors).  On June 15, he met with Dr. R. Fong, who told Jackson that he did not qualify for the prison's mental health program.  On June 24, Jackson sent a health services request.  Responding to that request on June 30, Dr. K. Freiha also met with Jackson and denied his request for treatment, stating that Jackson could not "dictate the program and would not be provided treatment."

---

[1] Jackson has suffered from mental illness since age four.  He has spent time in hospitals since he was seven years old, and he has a history of major depressive disorder, panic disorder, social phobia, and anti-social personality disorder.

On August 27, 2010, Jackson met with Dr. P. Burton, and requested administrative segregation (solitary confinement) to help address his mental health issues. After Burton denied his request, Jackson threatened violence unless prison officials placed him in solitary confinement. Subsequently, prison officials placed Jackson in solitary confinement from August 27, 2010 to November 5, 2011. During that time, Jackson's physical and mental health "deteriorated significantly." He "would often miss numerous medical appointments and classification hearings . . . because he could not leave his cell [due] to severe social phobia, panic attacks, and depression." He lost good-time credits and spent "unnecessary time in prison" because of his time in solitary confinement.

## II.

The California Department of Corrections and Rehabilitation (CDCR) has an administrative review process with well-established procedures and three levels of review. On-site staff process health care appeals at the first and second level. Third level appeals go to staff in the Inmate Correspondence and Appeals Branch within the headquarters of the California Correctional Health Care Services.

In March 2012, Jackson filed an inmate health care appeal for review of the Doctors' decisions and their alleged denial of mental health treatment. San Quentin's Health Care Appeals Office dismissed Jackson's appeal as untimely. Jackson concedes his administrative appeal was untimely.

Jackson then submitted an appeal—effectively to the second level of review—arguing that officials should excuse his untimeliness in light of the mental health issues he had

experienced.  The Health Care Appeals Office received the second-level appeal on May 10, 2012, and denied it on May 30, 2012.

At this point, Jackson began to pursue review simultaneously in the CDCR and in federal district court. His appeal to the third and final level of review within CDCR's administrative scheme reached that office in July 2012.  CDCR took no immediate action.  In the meantime, while still in prison and awaiting the third-level administrative decision, Jackson filed suit in federal district court.  Jackson subsequently filed a first amended complaint in September 2012.

In December 2012, while Jackson's first amended complaint was pending before the district court, CDCR released him from custody.  At the time of Jackson's release, his administrative appeal remained pending at the third level of review.  In January 2013, CDCR closed Jackson's still-pending appeal because of his release.

Within three days of his release, Jackson notified the district court that he was no longer in custody and withdrew his pending request for injunctive relief.  The district court dismissed Jackson's first amended complaint with leave to amend.  Jackson then filed a second amended complaint on March 7, 2013, when he was no longer in custody.

In response, one of the named defendants moved to dismiss the second amended complaint, arguing that Jackson improperly asserted unrelated claims against numerous defendants in one suit, and failed to allege the participation of the defendants in a common event or set of events.  The district court granted the motion to dismiss with partial leave to amend, effectively giving Jackson a choice about which set of claims to pursue:

The dismissal is with partial leave to amend to bring one of plaintiff's three claims—deprivation of mental health treatment, food contamination or use of excessive force (as well as supervisory liability claim connected to underlying claim)—in an amended complaint within 30 days of this order. (Plaintiff is free to bring the other two claims in two separate new suits.)

Jackson then filed his third amended complaint. It was, compared to his previous filings, succinct. Jackson named the Doctors as defendants, alleging that they "denied him treatment for his mental illnesses (including depression and anxiety) despite his asking them for treatment." Specifically, Jackson alleged that the Doctors showed deliberate indifference to his serious medical needs in violation of the Eighth Amendment. At the screening stage, the district court concluded that these allegations stated a cognizable claim.

The remaining three defendants—Fong, Burton, and Freiha—then moved for summary judgment. They argued that Jackson's failure to exhaust administrative remedies before filing suit violated the PLRA. In February 2015, the district court granted the motion. By this time, Jackson was an inmate at a state correctional facility in Nevada. Jackson timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and now reverse.

III.

When the district court grants summary judgment for failure to exhaust remedies under the PLRA, we review the district court's legal conclusions de novo, and its factual findings for clear error. *Talamantes v. Leyva*, 575 F.3d 1021, 1023 (9th Cir. 2009). "Interpretation of the PLRA is a question of law" reviewed de novo. *Id.*

Applying this standard, we review de novo whether a prisoner who first raises unexhausted claims while incarcerated, but is subsequently granted leave to file an amended complaint for damages after his release from prison, may be subject to an exhaustion defense under the PLRA.

## A.

The PLRA "requires that a prisoner challenging prison conditions exhaust available administrative remedies before filing suit." *Albino v. Baca*, 747 F.3d 1162, 1165 (9th Cir. 2014) (en banc) (citing 42 U.S.C. § 1997e(a)); *see* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Administrative exhaustion within California requires the completion of the third level of administrative review. *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010); *see* Cal. Code Regs. tit. 15, § 3084.1(b). "Failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove.'" *Albino*, 747 F.3d at 1166 (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). In most circumstances, the appropriate procedural mechanism is a motion for summary judgment under Federal Rule of Civil Procedure 56, with the defendant attaching the evidence necessary to demonstrate a failure to exhaust. *Id.*

In this case, Jackson did not exhaust his administrative remedies prior to initiating his federal suit.[2] The exhaustion

---

[2] In practice, Jackson could not exhaust his administrative remedies because the CDCR cancelled his appeal at the third level of review after

requirement, however, does not apply to non-prisoners. *Page v. Torrey*, 201 F.3d 1136, 1139 (9th Cir. 2000) (holding that the PLRA exhaustion requirement only applies to "prisoners," and that to be a prisoner "the individual in question must be *currently detained* as a result of accusation, conviction, or sentence for a criminal offense") (emphasis added)); *see Talamantes*, 575 F.3d at 1023 ("The language of the statute is plain and unambiguous—the exhaustion requirement applies only to 'prisoners.'").

The only question on appeal is whether the administrative exhaustion requirement applies to Jackson. The answer depends on whether the court should look to the initiation of the suit (when Jackson was a prisoner, and had not exhausted his remedies), or to Jackson's operative third amended complaint (filed when Jackson was not a prisoner, and the exhaustion requirement did not apply).

The Supreme Court has acknowledged the "challenges faced by the lower federal courts in managing their dockets and attempting to separate, when it comes to prisoner suits, not so much wheat from chaff as needles from haystacks." *Jones*, 549 U.S. at 224. But "adopting different and more

---

Jackson's release. Cancellation is not equivalent to exhaustion, CAL. CODE REGS. tit. 15, § 3084.1(b), and "the PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The Ninth Circuit, however, reads the PLRA to allow equitable considerations. *See, e.g.*, *Andres v. Marshall*, 854 F.3d 1103, 1105 (9th Cir. 2017) ("When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies."). It was impossible for Jackson to exhaust his remedies under the circumstances, and equitable considerations might allow a different result in this case if Jackson did not otherwise prevail on the legal merits. Nonetheless, Jackson does not argue for an equitable exception, and we do not rely on equitable considerations in reversing summary judgment.

onerous pleading rules to deal with particular categories of cases should be done through established rulemaking procedures, and not on a case-by-case basis by the courts." *Id.* Interpreting *Jones*, we have concluded that "we should treat an exhaustion defense under the PLRA within the framework of the Federal Rules of Civil Procedure." *Albino*, 747 F.3d at 1169. So we now look to the Federal Rules of Civil Procedure to answer the question posed.

## B.

In *Rhodes v. Robinson*, also applying *Jones*, we concluded that the amended complaint controlled the PLRA exhaustion analysis. 621 F.3d 1002, 1005 (9th Cir. 2010). There, new claims in appellant's second amended complaint (SAC)

> were "brought" within the meaning of § 1997e on March 20, 2006, when he tendered that complaint for filing with his motion for leave to file an amended complaint. The SAC alleged that, at the time of filing, all of the claims within it had been properly exhausted. Defendants' argument that the PLRA requires the newly-added claims in the SAC to have been exhausted before the original complaint was "brought" on January 4, 2002, fails because it ignores the general rule of pleading that the SAC completely super[s]edes any earlier complaint, rendering the original complaint non-existent and, thus, its filing date irrelevant.

*Id.* The appellant's SAC "was, in fact, a supplemental complaint, regardless of the label attached to it by the *pro se*

prisoner-plaintiff, permitted under Federal Rule of Civil Procedure 15(d)."  *Id.* at 1006.  "Congress has never indicated . . . that it intended to do away with Rule 15(d) and supplemental pleadings in PLRA actions."  *Id.* at 1007.

In this case, there is no dispute that we analyze Jackson's third amended complaint as a supplemental complaint within the meaning of Rule 15(d).  *Rhodes* reminds that a supplemental complaint "completely super[s]edes any earlier complaint, rendering the original complaint non-existent and, thus, its filing date irrelevant."  621 F.3d at 1005.  A supplemental complaint also can defeat an affirmative defense applicable to an earlier complaint, even when that affirmative defense is jurisdictional.  *See Mathews v. Diaz*, 426 U.S. 67, 75 (1976); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015).  In PLRA cases, amended pleadings may supersede earlier pleadings.

Even though the Supreme Court squarely rejected relying on the distinction between "action" and "claim" in the PLRA, *Jones*, 549 U.S. at 222–23, the Doctors nonetheless argue that this distinction resolves Jackson's case by requiring that exhaustion apply to the filing of the action, rather than the claims in Jackson's third amended complaint.  But that distinction "creates its own inconsistencies."  *Id.* at 222–23; *see* 28 U.S.C. §§ 1915A(b), 42 U.S.C. § 1997e(c)(1), (2).  The *Jones* Court expressly determined that courts should not read the word "action" to be dispositive because "[t]his statutory phrasing—'no action shall be brought'—is boilerplate language."  *Id.* at 220.  There can be no "total exhaustion rule."  *Id.* at 220–24.  *Jones* therefore forecloses any argument that the statutory reference to an "action" precludes Jackson from curing a deficiency in his claim by amendment.  Jackson can cure

deficiencies through later filings, regardless of when he filed the original "action." Here, his amended complaint, filed when he was no longer a prisoner, obviates an exhaustion defense.

## C.

The Doctors cite several out-of-circuit decisions that predate *Jones* to argue against the result we adopt here. *See Cox v. Mayer*, 332 F.3d 422, 425 (6th Cir. 2003) (holding that "plaintiff was required to exhaust any available administrative remedies before he filed suit" and "his suit must be dismissed" even though plaintiff was no longer incarcerated); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) (suggesting in dicta that post-release amendment might be futile when the plaintiff was a prisoner subject to an exhaustion defense on the first filing date); *Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000) (en banc) (holding that the term "brought" in 42 U.S.C. § 1997e referred to the filing of the action).[3] We find those arguments unpersuasive. Not only do these decisions predate *Jones*, our own court's authorities have since interpreted applications of the PLRA and provide better guidance. *See, e.g.*, *Albino*, 747 F.3d at 1168–69; *Rhodes*, 621 F.3d at 1005, 1007. In any case, the *Cox* and *Ahmed* courts did not squarely address Rule 15(d) arguments, *Cox*, 332 F.3d at 428; *Ahmed*, 297 F.3d at 210, and the *Harris*

---

[3] Our sister circuits might well decide these cases differently today. *Compare Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 465 (M.D. Pa. 2010) (looking to amended complaint rather than original complaint to conclude that a prisoner who had exhausted his claims by the time of his amended complaint was not subject to exhaustion defense), *with Jackson v. Gandy*, 877 F. Supp 2d 159, 175 (D.N.J. 2012) (finding plaintiff who was a prisoner when he filed his original complaint was subject to an exhaustion defense even after amending complaint post-release).

decision did not directly interpret the exhaustion provision relevant here, *Harris*, 216 F.3d at 972 (interpreting 42 U.S.C. § 1997e(e), not the exhaustion requirement codified at § 1997e(a)).

Since *Jones*, the Sixth Circuit has commented that it found our treatment of Rule 15 in *Rhodes* and other cases "compelling." *Mattox v. Edelman*, 852 F.3d 583, 592 (6th Cir. 2017) *reh'g denied* (Apr. 6, 2017). Even so, in *Mattox*, the Sixth Circuit held that the "PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Id.* at 595. This judge-made rule requiring prisoners to file suit with at least one exhausted claim to avoid a later exhaustion defense is likely "in tension with the Court's admonition in *Jones* against deviating from 'the usual practice under the Federal Rules'" in PLRA cases. *See Albino*, 747 F.3d at 1166 (quoting *Jones*, 549 U.S. at 212).

Exhaustion requirements apply based on when a plaintiff files the operative complaint, in accordance with the Federal Rules of Civil Procedure. *See Jones*, 549 U.S. at 212; *see also Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005) (finding that "[t]he filing of the amended complaint was the functional equivalent of filing a new complaint, and it was only at that time that it became necessary to have exhausted the administrative remedies against the state defendants"); *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (allowing a prisoner to raise fully exhausted claims by amending complaint in pending civil rights litigation); *Martinez v. Guadalupe County*, 200 F. Supp. 3d 1216, 1260 (D.N.M. 2016) (concluding that the plaintiff's status at the time of the amended complaint governs whether the PLRA

exhaustion requirement applies) (citing *Rhodes*, 621 F.3d at 1005).**4**

### D.

The Doctors also argue that allowing Jackson's suit to proceed "would reward prisoners who neglect their exhaustion obligations and discourage prisoners from using the prison appeal process." The Doctors overstate any policy concerns.

District court discretion is critical to assessing the fairness of amended pleadings. *See* Fed. R. Civ. P. 15(a)(2) (stating that "a party may amend its pleading only with the opposing party's written consent or the court's leave"). District courts play an especially vital gatekeeping role in administering the PLRA and screening prisoner complaints. We recognize that "a district court's discretion to allow the addition of a new claim in an amended complaint should not be curtailed where it is not required by law or statute." *Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014). A district court, however, need not give leave to amend a complaint where a plaintiff appears to be gaming the courts, or

---

**4** The Doctors argue that several district courts within the Ninth Circuit appear to have applied the PLRA's exhaustion requirement "to claims first asserted while the plaintiff was still a prisoner, regardless of the operative, amended complaint being filed after the plaintiff's release." *See, e.g.*, *VanValkenburg v. Oregon Dep't of Corr.*, No. 3:14-CV-00916, 2016 WL 2337892, at *12 (D. Or. May 2, 2016); *Anderson v. Deleon*, No. C 12-6055, 2014 WL 3595020, at *6 (N.D. Cal. July 21, 2014); *Seward v. Persson*, No. 6:12-CV-01073, 2014 WL 494879, at *2 (D. Or. Feb. 5, 2014); *Dixon v. Triesch*, No. 1:12-CV-01449, 2013 WL 6670436, at *3 (E.D. Cal. Dec. 18, 2013); *Smedley v. Reid*, No. 08-CV-1602, 2010 WL 391831, at *4 (S.D. Cal. Jan. 27, 2010). To the extent that these district court decisions are inconsistent with the result or reasoning in this appeal, they are not binding.

otherwise exploiting an impending release from custody. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting "bad faith" as one reason justifying denial of leave to amend). Here, the district court carefully handled Jackson's complaint and unique situation.

Moreover, once a prisoner is no longer in custody, there is nothing to gain by forcing the prisoner through the administrative process. Many PLRA provisions do not apply to former prisoners. *See, e.g.*, *Olivas v. Nevada ex rel. Dep't of Corr.*, 856 F.3d 1281, 1284 (9th Cir. 2017) (finding screening procedures of PLRA apply only to plaintiffs in custody). The PLRA expresses Congress' preference for prison officials to have a fair chance to address matters internally before a prisoner may turn to the courts. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion serves these goals directly. *Id.* at 94. But after a prisoner's release, there is no internal process left to undermine.

The Doctors do not argue that a statute of limitations should have barred Jackson's claims at any stage, and there is no indication that a statute of limitations would have applied had Jackson chosen to file anew rather than amend. The statute of limitations relevant to Jackson's § 1983 claims was California's two-year limit for personal injuries. *See* Cal. Code Civ. Proc. § 335.1, *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014) (discussing statute of limitations for § 1983 actions). Jackson was well within its limits. *See* Cal. Civ. Proc. Code § 352.1 (allowing up to two years of tolling of the statute of limitations for plaintiffs incarcerated at the time their cause of action accrues). Jackson could have initiated a new action, rather than seeking to amend his complaint. That he chose to inform the district court promptly of his change in status and continue within the same proceeding did not

benefit him strategically, but did promote judicial economy. In other words, the record here does not suggest gamesmanship on Jackson's part. It advances no purpose of the PLRA to deprive such a plaintiff the opportunity to have his complaint heard. *See Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) (per curiam) (noting that the PLRA's justifications, including preventing frivolous litigation by prisoners, "simply do not apply to individuals who were formerly incarcerated"); *see also Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998) (noting less need to take "special precautions against weak suits" after a plaintiff leaves prison).

Finally, policy decisions regarding prisoner incentives and litigation requirements are for Congress, not the courts, to weigh and impose. As the Supreme Court has stated, "courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns." *Jones*, 549 U.S. at 212. Thus, even if we found the Doctors' policy arguments convincing, we do not have license to rely on policy considerations to carve out exceptions to the Federal Rules in the context of the PLRA.

## IV.

A plaintiff who was a prisoner at the time of filing his suit but was not a prisoner at the time of his operative complaint is not subject to a PLRA exhaustion defense. Jackson was not a prisoner when he filed his operative third amended complaint, and therefore cannot be subject to an exhaustion defense. *Page*, 201 F.3d at 1139. As a result, the

district court erred in granting summary judgment to the Doctors.[5]

**REVERSED and REMANDED**.

McCALLA, District Court Judge, concurring in judgment:

I concur in the judgment alone.  The district court improperly determined Jackson had not exhausted his claims, not because the PLRA was inapplicable to his post-release third amended complaint, but because Jackson's failure to exhaust is excusable under § 1997e(a).

Exhaustion under the PLRA is measured at the time the action is filed.  *McKinney v. Carey*, 311 F.3d 1199 (9th Cir. 2002); *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) ("[E]xhaustion is analogous to subject-matter jurisdiction, personal jurisdiction, venue, and abstention, in that all these matters are typically decided at the outset of the litigation . . . . [But unlike personal jurisdiction and venue] a failure to exhaust . . . concern[s] a prerequisite to bringing suit in any court.")  Since the Supreme Court's decision in *Jones*, several circuits now permit plaintiffs to litigate claims newly included in an amended complaint, so long as those claims are fully exhausted by the time the plaintiffs filed the amended complaint.  *Cano v. Taylor*, 739 F.3d 1214, 1221 (9th Cir. 2014); *Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010); *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005);

---

[5] The district court granted summary judgment to the Doctors solely based on the exhaustion defense.  We leave issues of qualified immunity for the district court to resolve in the first instance.  *Schneider v. Cty. of San Diego*, 28 F.3d 89, 93 (9th Cir. 1994).  We express no opinion on the merits of Jackson's claims or of any other defenses.

*Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017), *reh'g denied* (Apr. 6, 2017) (distinguishing itself from *Cox v. Mayer*, 332 F.3d 422, 428 (6th Cir. 2003) where the plaintiff "had not exhausted any of his claims before filing suit in federal court," and thus "Rule 15(d) could not save an action that did not comply with the PLRA's exhaustion requirement in any way."); *see also Mitchell v. Dodrill*, 696 F.Supp.2d 454, 465 (M.D. Pa. 2010) (finding incarcerated plaintiff had "exhausted his administrative remedies related to his claims prior to filing the amended complaint," but only after the district court highlighted that plaintiff filed two separate actions, the later-filed second action was exhausted, and the district court consolidated the cases and itself directed plaintiff to file an "amended complaint").

The ability to amend a complaint with fully exhausted claims, however, does not permit plaintiffs to override the substantive requirement contained in the PLRA. *See Mattox*, 851 F.3d at 591. Accordingly, our sister courts have held that if a plaintiff fails to exhaust any of his claims prior to filing, his later release and subsequent amended pleading do not relieve him of the PLRA's exhaustion requirement. *Bulter v. Suffolk Cty.*, 289 F.R.D. 80, 93 n.6 (E.D.N.Y. 2013) ("That Plaintiff King filed the [Consolidated Amended Complaint] after being released from custody does not relieve him of the PLRA's exhaustion requirement."); *Jackson v. Gandy*, 877 F. Supp. 2d 159, 175 (D.N.J. 2012); *Banks v. York*, 515 F.Supp.2d 89, 106 n.7 (D.D.C. 2007) ("Notwithstanding his release, plaintiff was still incarcerated [when the action was filed], and he is therefore subject to the requirements of the PLRA."). I, therefore, respectfully disagree with the majority and would find that the PLRA remained applicable to Jackson despite his post-release amended complaint. I nevertheless agree with the majority's judgment because Jackson effectively exhausted his claims,

and thus he is excused from the PLRA exhaustion requirement.

Prisoners who are functionally unable to exhaust their claims through no fault of their own may be excused from the PLRA exhaustion requirement. *See, e.g.*, *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016); *Williams v. Paramo*, 775 F.3d 1182 (9th Cir. 2015); *Nunez v. Duncan*, 591 F.3d 1217, 1224–26 (9th Cir. 2010) ("We hold that Nunez's failure to timely exhaust his administrative remedies is excused because he took reasonable and appropriate steps to exhaust his Fourth Amendment claim and was precluded from exhausting, not through his own fault . . . ."). In other words, we have recognized that the PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." *Nunez*, 591 F.3d at 1226.

In *Ross v. Blake*, the Supreme Court held that § 1997e(a) requires an inmate to exhaust only those "grievance procedures that are capable of use to obtain some relief for the action complained of." — U.S. —, 136 S.Ct. 1850, 1859, 195 L.Ed.2d 117 (2016) (citation and internal quotation marks omitted). The Court set out three examples of circumstances in which an administrative remedy was not capable of use to obtain relief despite being officially available to the inmate: (1) when the administrative procedure "operates as a simple dead end" because officers are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

Under the circumstances present here, I would find Jackson exhausted his available administrative remedies prior to filing his March 7, 2013 second amended complaint in January 2013, when CDCR closed Jackson's still-pending appeal due to his release.

As I would find the PLRA still applied to Jackson and that he is excused from the exhaustion requirement under § 1997e(a), I concur in the judgment only.