**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BILLY F. MAY,

     Plaintiff - Appellant,

v.

JUAN SEGOVIA,

     Defendant - Appellee.

No. 17-1458

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:15-CV-00405-NYW)**
_____

Anthony Balkissoon (Amir H. Ali and Joshua Freiman on the briefs), Roderick & Solange MacArthur Justice Center, Washington, D.C., for Appellant.

Karl L. Schock, Assistant United States Attorney (Robert C. Troyer, United States Attorney, with him on the brief), Denver, Colorado, for Appellee.
_____

Before **BRISCOE**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

Billy F. May, a former federal prisoner, brought this action in federal district court under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Mr. May claims he was denied his due process rights as a prisoner when he was quarantined

without a hearing during a scabies infestation at the prison. The magistrate judge granted Mr. Segovia summary judgment on two issues: first, that the exhaustion requirement of the Prison Litigation Reform Act ("PLRA") applies to Mr. May, and second, that there is no genuine issue of material fact as to the availability of administrative remedies. Mr. May appealed to contest both conclusions. Mr. Segovia opposes Mr. May's appeal and raises two alternative grounds for affirmance that Mr. Segovia raised below but the magistrate judge did not reach.

For the reasons stated, we affirm the magistrate judge's conclusions that the PLRA exhaustion requirement applies to Mr. May and that there is no genuine issue of material fact as to whether administrative remedies were available to him. Because we affirm the judgment below, we need not and do not reach Mr. Segovia's alternative arguments.

## I.    BACKGROUND

At the time this action began, Mr. May was a prisoner in the Federal Prison Camp in Florence, Colorado. The Federal Prison Camp periodically "experienced chronic outbreaks of scabies, a parasitic infection of the skin caused by scabies mite[s]," and one such outbreak occurred while Mr. May was imprisoned there. Appellant's App. at 16–17 (internal citation omitted). Scabies is a "highly contagious and communicable disease" that is transmitted by sharing "clothing, bedding, or towels," and "through skin-to skin contact." *Id.* at 16. Individuals infected with scabies develop itchy skin as a symptom, but that symptom may not present for as many as six weeks after the disease is contracted. Due to that delay, it was the

2

prison's policy to treat both "symptomatic inmates and asymptomatic 'close contacts,' namely cellmates." *See id.* Scabies can be treated either orally (with Ivermectin) or with a skin cream (permethrin cream).

When scabies broke out at the prison in January 2015, the prison required every inmate to take Ivermectin or, if they refused for any reason, to be quarantined in the Special Housing Unit (the "SHU"). Mr. May refused to take the Ivermectin because "he previously suffered an allergic reaction" to the drug. Appellant's App. at 17. Due to that refusal, on January 8, 2015, then camp administrator Juan Segovia ordered Mr. May quarantined in the SHU and treated with permethrin cream "until medically cleared by FPC medical staff." *Id.*

For an unspecified reason, Mr. May was initially unable to obtain "the appropriate forms" to file an administrative grievance while confined in the SHU. *See id.* at 18, 25. Although it is unclear from the record how long he lacked access to those forms, the record reflects that Mr. May ultimately filed five grievances before he was medically cleared to leave the SHU on February 4, 2015. Mr. May filed an additional twenty-four grievances between the day he left the SHU and his ultimate release from prison in November 2015. None of the twenty-nine grievances "dealt with [Mr. May's] placement in the SHU, conditions in the SHU, or the denial of a hearing upon his placement in the SHU." *Id.* at 18.

On February 27, 2015, and while still incarcerated, Mr. May filed a pro se prisoner complaint in federal district court. Among other things, Mr. May alleged that the prison had not "follow[ed] the due process procedures outlined by the

3

Supreme Court" when, "for disciplinary purposes," it placed him in the SHU for refusing to take Ivermectin. *See* Appellee's Suppl. App. at 4. On March 16, "[a]t the [district] court's direction to refile using the appropriate form," Mr. May filed his First Amended Complaint ("FAC"). Appellant's App. at 14. He made essentially the same allegations—again asserting that the prison had not provided him with a hearing and had not followed the "due process procedures outlined by the Supreme Court," *see* Appellee's Suppl. App. at 16—but now framed them as *Bivens* claims.[1] The district court dismissed some of Mr. May's claims not relevant here and referred the remainder to a magistrate judge.

In April 2015, Mr. May moved for summary judgment. The government filed its response in opposition to Mr. May's summary judgment motion in June. Attached to that response as Exhibit C was a declaration from Mr. Segovia—who was not yet a named defendant—that stated Mr. Segovia had "made the decision to place" Mr. May in the SHU. *Id.* at 37–38. In July, Mr. May moved to file a second amended complaint (the "SAC") to add Mr. Segovia as a defendant. Although Mr. May filed that motion in July, the court did not grant it until January 19, 2016, two months after Mr. May had been released from custody.

The magistrate judge construed the SAC as raising three constitutional claims and dismissed two of those claims. Mr. May has not appealed those rulings. The

[1] A *Bivens* claim is a claim for money damages against federal officials or employees who participated in unconstitutional conduct. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396 (1971).

magistrate judge denied the government's motion to dismiss the *Bivens* claim based on procedural due process against Mr. Segovia; Mr. Segovia then moved for summary judgment. The magistrate judge ultimately granted that motion, concluding that Mr. May was subject to the PLRA and had not exhausted his administrative remedies. In doing so, the magistrate judge also determined there was no genuine issue of material fact that administrative remedies were not "available" to Mr. May.

Mr. May now appeals both of those rulings, arguing the PLRA does not apply to him because he was not a prisoner at the time he filed his operative complaint—the SAC—and even if the PLRA does apply, there is a genuine issue of material fact as to whether administrative remedies were available to him, rendering summary judgment improper. Mr. May does not dispute the magistrate judge's determination that he did not exhaust available administrative remedies.

In opposition to Mr. May's appeal, Mr. Segovia raises two additional issues he argued below but that the magistrate judge did not reach: first, whether this court recognizes a *Bivens* claim based on procedural due process, and second, if it does, whether Mr. Segovia is entitled to qualified immunity. Because we affirm the magistrate judge's decision on the same grounds relied upon by the magistrate judge, we do not reach Mr. Segovia's alternative arguments.

## II.   DISCUSSION

The PLRA states: "No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Any

5

prisoner who seeks to bring a claim involving "general circumstances or particular episodes" of prison life, *see Porter v. Nussle*, 534 U.S. 516, 532 (2002), must first exhaust the administrative remedies available to him in prison, *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA . . . ."). Mr. May argues the PLRA exhaustion requirement does not apply to him because his Second Amended Complaint was deemed filed in January 2016, two months after he had been released from prison. Alternatively, he argues that even if the PLRA does apply, there is a genuine dispute of material fact whether any administrative remedies were available to him, which renders the grant of summary judgment improper.

We first address the applicability of the PLRA and conclude it does apply to Mr. May. We next review the magistrate judge's determination that there is no genuine issue of material fact concerning the availability of administrative remedies and affirm its decision.

### A. *The Applicability of the PLRA*

Questions of statutory interpretation, like the proper interpretation of the PLRA, are pure questions of law that we review de novo. *See In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018). The text of the PLRA establishes a temporal relationship between the exhaustion requirement and any prisoner's suit. "No action shall be brought," it says, "*until* such administrative remedies as are available shall be exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Because an action is brought or "commenced by filing a complaint with the court," *see* Fed. R. Civ. P. 3, a plain

6

reading of the PLRA could require exhaustion so long as the plaintiff was a prisoner when the initial complaint was filed. But the Supreme Court's decision in *Jones v. Bock* offers a more nuanced interpretation of the "no action shall be brought" language.

## 1. *Jones v. Bock*

In *Jones*, the Court considered consolidated PLRA cases. *See* 549 U.S. at 204-11. The Sixth Circuit had interpreted the PLRA to create three somewhat novel procedural rules: first, that exhaustion was a pleading requirement rather than an affirmative defense; second, that PLRA exhaustion required full exhaustion of administrative remedies for "each individual later named in the lawsuit"; and third, that when unexhausted and exhausted claims are both included in the same suit, a "total exhaustion" rule applies, requiring the dismissal of the whole action, not just the unexhausted claims. *Id.* at 204–06. The Court rejected each of these rules because "courts should generally not depart from the usual practice under the Federal Rules" unless the PLRA expressly indicates otherwise. *See id.* at 212 (explaining that the PLRA's "silence" on a procedural issue "is strong evidence that the usual practice" under the Federal Rules "should be followed").

In its discussion of the third issue—the total exhaustion rule—the Court noted that the "no action shall be brought" language is common in statutes of limitation and is not used in that context to dismiss whole actions because of the inclusion of an untimely claim. *Id.* at 220–21. "As a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." *Id.* at

The Supreme Court explained that a total exhaustion rule departs from the usual practice under the Federal Rules by reading "action" literally, rather than understanding it in context of normal practice under the Federal Rules. Thus, with the Supreme Court's clarifying interpretation, the PLRA's imperative is properly understood to apply to *claims* and not entire actions.

The question under *Jones*, then, is when Mr. May's due-process claim—the only claim before us—first entered the litigation. If Mr. May brought this claim prior to his release from prison, the PLRA requires him to exhaust it.

Accordingly, there are three complaints that could have introduced the claim into the litigation here. First, because the due process allegations were included in the initial complaint, we could conclude it is the operative complaint for determining whether the PLRA applies. Second, Mr. May repackaged his due process allegation as a *Bivens* action in the FAC, which might be significant for PLRA purposes. The third complaint of relevance here is the SAC, which Mr. May contends is the proper focal point of our inquiry. According to Mr. May, adding Mr. Segovia as a defendant gives rise to a new claim under the PLRA. We address each of these pleadings in turn.

## 2. The Initial Complaint

As previously explained, Mr. May alleged in his original complaint that the prison had not "follow[ed] the due process procedures outlined by the Supreme Court" when, "for disciplinary purposes," it placed him in the SHU for refusing to take Ivermectin. *See* Appellee's Suppl. App. at 4. Because Mr. May was incarcerated

when the initial complaint was filed, any claim raised in it must be exhausted under the PLRA. Because this complaint first introduced the due process claim, exhaustion is required.

### 3. The First Amended Complaint

Mr. May restyled his due process claim as a *Bivens* claim in his First Amended Complaint, filed before his release on March 16, 2015. The *Bivens* claim, however, contained essentially the same allegations as the initial complaint and, thus, simply provides a mechanism for the collection of damages for the previously-alleged due process violation.

But, even if we assume Mr. May's repackaging of his allegations under *Bivens* created a new claim for purposes of the PLRA exhaustion requirement, the claim was "brought," at the latest, in his FAC, eight months before his release. Because Mr. May initially brought his due-process claim while he was still a prisoner, the PLRA applies to that claim and requires that it be exhausted before a federal court may consider it.

Mr. May contends, however, that the initial complaint and the FAC are no longer of any relevance because they were superseded by the SAC. To hold otherwise, Mr. May argues, would impermissibly "'depart from the usual practice under the Federal Rules,'" *see* Appellant's Br. at 12 (quoting *Jones*, 549 U.S. at 212) because "[i]t is well established that when a plaintiff amends his complaint under [Rule] 15, the amended complaint 'supersedes the original and renders it of no legal effect.'" *Id.* at 13 (quoting *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir.

9

1991)). According to Mr. May, the SAC superseded his previous complaints when it was deemed filed in January 2016. Because the filing occurred after his release, he argues that, for the purposes of the exhaustion requirement, his prisoner status must be determined at that point. But Mr. May overreads our precedents.

It cannot be correct that an amended complaint renders the original complaint "of no legal effect" for *all* purposes or else Rule 15(c) would be null. That rule states that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Rule 15(c) expressly contemplates an un-superseded original complaint as to timing for, at the very least, statutes of limitation, *see* Rule 15(c)(1)(a), and for determining when an action was commenced or a claim was brought because nothing in Rule 15(c) indicates that it displaces Rule 3. Instead, even when a complaint is properly amended and the conditions of Rule 15(c) are met, the amended complaint must still relate back *to the original complaint* for some purposes. The amended complaint, as the operative complaint, supersedes the original complaint's *allegations* but not its *timing*.

When amended complaints are so understood, it becomes clear why Mr. May's argument that "the plaintiff's operative complaint controls the analysis for a statutory exhaustion requirement" is likewise meritless. *See* Appellant's Br. at 15. Mr. May first points to *Mathews v. Diaz*, 426 U.S. 67 (1976), to support this proposition. There, the Supreme Court concluded that a supplemental complaint cured a failure to

10

exhaust under 42 U.S.C. § 405(g). *See Diaz*, 426 U.S. at 75. Mr. May argues this case is particularly helpful to his claims because § 405(g) "makes exhaustion a nonwaivable condition of jurisdiction," Appellant's Br. at 15 (quoting *Diaz*, 426 U.S. at 75), while "the PLRA exhaustion requirement is not jurisdictional," *id.* at 16 (quoting *Woodford v. Ngo*, 548 U.S. 81, 101 (2006)). But the jurisdictional/non-jurisdictional distinction cuts against Mr. May because the exhaustion requirement in § 405(g), like all jurisdictional exhaustion requirements, includes a pleading requirement that can be satisfied only by changing the allegations in the complaint. *See Mathews v. Eldridge*, 424 U.S. 319, 328 (1976) (explaining that a "complaint was found jurisdictionally deficient" for failing to exhaust because "it 'contain[ed] no allegations that the[ plaintiffs] had even filed an application with the Secretary'" (first alteration in original) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 95 (1975))). In contrast, the PLRA exhaustion requirement is an affirmative defense, not a pleading requirement. *See Jones*, 549 U.S. at 216. The question under the PLRA is the timing of the claim alleged, not the sufficiency of the allegations. Because superseding allegations cannot change the status of the prisoner at the time he "brought" the relevant unexhausted claim, *Diaz* cuts against Mr. May's argument.

Accordingly, if we consider the initial complaint or the FAC in assessing when the due process claim was first introduced into the litigation, the PLRA required Mr. May to exhaust that claim.

### 4. The Second Amended Complaint

Mr. May next contends that the SAC is the proper focus here because adding Mr. Segovia as a defendant gave rise to a new claim under the PLRA. Amendments that add defendants, he argues, "are categorically treated as commencing a new case as to the added defendants." Appellant's Reply Br. at 9 (quoting *Prime Care of Ne. Kan., L.L.C. v. Humana Ins. Co.*, 447 F.3d 1284, 1286 (10th Cir. 2006)). According to his argument, by adding "a completely new defendant," Mr. May "create[d] a new cause of action." *Id.* (quoting *Graves v. Gen. Ins. Corp.*, 412 F.2d 583, 585 (10th Cir. 1969)). But Mr. May mischaracterizes our decision in *Prime Care* and fails to account for *Jones*'s impact on *Graves*.

In *Prime Care*, we addressed whether and how "pleading amendments" filed after the enactment of the Class Action Fairness Act affected the "commencement date" of actions filed prior to its enactment. 447 F.3d at 1285–86. We considered three possible approaches that had been adopted by other federal courts, the third of which was that post-enactment pleading amendments did not "affect the commencement date" of pre-enactment actions "if they d[id] not relate back or if they add[ed] new defendants to the case." *Id.* at 1286. This approach was based on the view that, per Mr. May's quoted language, amendments adding defendants "are categorically treated as commencing a new case as to the added defendants." *Id.* Far from accepting that view, however, we explicitly rejected it and did so on the basis that "an amendment adding a defendant does not necessarily commence a new action as to that defendant." *Id.* at 1286, 1288.

12

As to *Graves*, Mr. May is correct that we concluded that substitution or addition "of a completely new defendant creates a new cause of action." 412 F.2d at 585. But there, we were concerned with whether the added or substituted parties had "notice of the original action." *Id.* Mr. Segovia has not alleged that he was not provided adequate notice, but even if he had, *Jones* is explicit that notice is not a concern relevant to the PLRA exhaustion requirement. *See* 549 U.S. at 218–19. In *Jones*, the Supreme Court rejected the Sixth Circuit's rule requiring prisoners to identify "each defendant they would later sue[]" in their initial complaint and to exhaust as to each defendant. *Id.* The Court acknowledged that the "Sixth Circuit rule may promote early notice to those who might later be sued, but that has not been thought to be one of the leading purposes of the exhaustion requirement." *Id.* at 219. Rather, "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that may be sued." *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). *Jones* teaches that, although adding or substituting a defendant *may* create a new claim for some purposes, it does not do so for purposes of the PLRA exhaustion requirement.

Mr. Segovia argues that this reading of *Jones* is supported by our usual application of the Federal Rules. As we explained, under Rule 15(c), an amended complaint related back to a prior complaint for timing purposes when the amended complaint "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out . . . in the [earlier] pleading." Fed. R. Civ. P. 15(c)(1)(B). Although Rule 15(c) typically applies in the statute of limitations context, the Eighth

13

Circuit has concluded that relation back is the "the pertinent threshold question" when addressing the PLRA's exhaustion requirement as well. *See Foulk v. Charrier*, 262 F.3d 687, 696 (8th Cir. 2001). Mr. May's due process claim in the SAC unquestionably "arose out of the conduct . . . set out" in the initial complaint and the FAC. Thus, Mr. Segovia would have us conclude, we look not to when the SAC was filed but "to the date of the original complaint" to determine Mr. May's status under the PLRA. Appellee's Br. at 19.

Mr. May disagrees and argues that 15(c) does not apply in the exhaustion context. He first contends that Mr. Segovia cited "no authority in which Rule 15(c) has been extended to *prevent a plaintiff* from receiving the ordinary benefits of amending his complaint. Indeed, allowing *a defendant* to invoke relation back to tie plaintiffs to the circumstances at the time of their original complaint would turn the doctrine's purpose on its head" because the relation back should "not be applied in a way that w[ould] produce results inconsistent with its remedial purpose." Appellant's Reply Br. at 9 (quoting 6A Charles Alan Wright et al., Federal Practice & Procedure § 1508 (3d ed.)). He also argues that applying 15(c) to an amended complaint that "add[s] a new defendant" is contrary to our usual practice under the Federal Rules which permits relation back "only to matters relating to the original parties of the complaint, or to correct a misnomer or a misdescription of [a] defendant, and not to add or substitute a new party defendant." *Id.* at 9–10 (quoting *Graves*, 412 F.2d at 585). This is not entirely true.

14

In certain specified circumstances, Rule 15(c)(1)(C) expressly allows for relation back for amendments that "change[] the party or the name of the party against whom a claim is asserted, " but at a minimum, Mr. Segovia would be required to show that he had the requisite notice of the action to allow relation back. *See* Fed. R. Civ. P. 15(c)(1)(C). Mr. Segovia has not made a meaningful argument to this court regarding the satisfaction of the notice requirements of Rule 15(c)(1)(C). For the first time on appeal and in a footnote of his response brief, Mr. Segovia makes a cursory reference to Rule 15(c)(2), which addresses how the "notice requirements" of Rule 15(c)(1)(C) "are satisfied" with respect to suits where a "United States officer . . . is added as a defendant by amendment." But Mr. Segovia does not make any arguments as to why that provision would be applicable in the context of Mr. May's *Bivens* claim against him in his individual capacity. Even if Mr. Segovia had made such meaningful arguments, we need not decide for the first time on appeal whether he satisfied the notice requirements of Rule 15(c)(1)(C) to support relation back.[2] This is because, even assuming

---

[2] Contrary to the suggestion in the concurrence, we did not decline to dispose of Mr. May's case under Rule 15(c)(1)(C) because we agreed with Mr. May that to do so would be "inconsistent with the remedial purposes of Rule 15(c)." Conc. Op. at 5. Instead, we refused to consider the Rule 15(c)(1)(C) argument because it was not preserved. Mr. Segovia argued only for the application of Rule 15(c)(1)(B) and (c)(2) and did so for the first time on appeal. His only argument that 15(c)(1)(C) was satisfied is based on meeting the requirements of 15(c)(2). So, although we are free to affirm the district court on any ground adequately supported by the record, we decline to exercise our discretion to adopt an argument wholly unaddressed by the parties when arguments properly raised will do.

15

Mr. May is correct that adding Mr. Segovia creates a new claim, making the SAC the operative complaint, he still cannot prevail.

Mr. May relies on the Ninth Circuit's opinion in *Jackson v. Fong*, 870 F.3d 928 (9th Cir. 2017), for the proposition that we look only to the timing of the SAC when determining the applicability of the PLRA. *Fong* presents a factual scenario similar to Mr. May's. The plaintiff in *Fong*—Mr. Jackson—was a prisoner in the midst of his final administrative appeal when he filed his original complaint. *Fong*, 870 F.3d at 932. Shortly after filing his suit, Mr. Jackson moved to amend his complaint. But before that motion was granted, as with Mr. May, he was released from custody. *Id.* The district court "dismissed [Mr.] Jackson's First Amended Complaint with leave to amend," which Mr. Jackson did, filing a second amended complaint after he was released from custody. *Id.* Due to circumstances irrelevant here, Mr. Jackson eventually filed a third amended complaint. *See id.*

The defendants moved for summary judgment, arguing that Mr. Jackson had not exhausted his administrative remedies, and the district court granted the motion. *Id.* The Ninth Circuit reversed, holding that "[t]he exhaustion requirement . . . does not apply to non-prisoners." *Id.* at 933. Relying on *Jones* and circuit caselaw, the court determined that to require Mr. Jackson to exhaust would "ignore[] the general rule" that "a supplemental complaint 'completely super[s]edes any earlier complaint, rendering the original complaint non-existent and, thus, its filing date irrelevant.'" *Id.* at 934 (quoting *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010)).

16

Despite the similar facts, *Fong* is distinguishable. There, the operative complaint was "a supplemental complaint within the meaning of Rule 15(d)." *See id.* Under Rule 15(d), a plaintiff may amend his complaint to account for "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). It is axiomatic that a supplemental complaint, filed after the plaintiff has been released from prison and raising claims that "happened after the date of the pleadings to be supplemented," would not be subject to the exhaustion requirement. Such claims would have been "brought" for purpose of the PLRA by a non-prisoner. As *Jones* implies, the district court reviewing an amended complaint filed under Rule 15(d) would have the responsibility, when the exhaustion defense is raised, to differentiate between claims that are exhausted—or to which the exhaustion requirement does not apply because they were first brought after the plaintiff was released from prison—and claims that are unexhausted, dismissing the latter and allowing the former to proceed. *See* 549 U.S. at 221–22. But that is not this case. The SAC was not filed under Rule 15(d) because Mr. May's *Bivens* claim did not arise from transactions or events that occurred after the First Amended Complaint. Indeed, it is undisputed that his only claim on appeal was first raised, at the latest, in the First Amended Complaint, which was filed eight months prior to his release.

But even if we were to agree that *Fong* is on point, Mr. Segovia contends the PLRA would still require Mr. May to exhaust his administrative remedies. *Fong* cited another Ninth Circuit case—*Rhodes v. Robinson*—approvingly, and there the Ninth

17

Circuit held that new claims were "brought" for purposes of the PLRA exhaustion requirement when the supplemental complaint was "tendered" to the court for filing, not when the court deemed it filed. *See Rhodes*, 621 F.3d at 1005; *see also Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004) (holding that "an action is 'brought' for purposes of [the PLRA exhaustion requirement] when the complaint is tendered to the district clerk"); *Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir. 2000) (holding that "the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes" when "the plaintiff seeks to add a new defendant" (quoting *Nw. Nat'l Ins. Co. v. Alberts*, 769 F. Supp. 498, 510 (S.D.N.Y.1991)); *Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1993) (holding that a motion for leave to amend "tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion"); *Mayes v. AT&T Info. Sys., Inc.*, 867 F.2d 1172, 1173 (8th Cir. 1989) (per curium) (adopting the tender rule to determine whether a complaint has been filed for statutes of limitation purposes). Such an approach is supported by common sense because "plaintiff[s] ha[ve] no way of controlling or even predicting the time at which any permission to amend [their complaint] will be granted, and thus no ability to control the date on which the amended complaint itself may be filed." *See Kane Cty., Utah v. United States*, 934 F. Supp. 2d 1344, 1363 (D. Utah 2013), *aff'd in part, rev'd in part on other grounds and remanded*, 772 F.3d 1205 (10th Cir. 2014) (quoting *Nett v. Bellucci*, 774 N.E.2d 130, 136 (Mass. 2002)). To permit a prisoner to avoid the exhaustion requirement simply because the court cannot or does not rule on

18

the prisoner's motion before he is released undermines the statute, circumventing the PLRA's commands through omission.

We have not yet adopted this approach in the Tenth Circuit. Mr. Segovia argues, for the first time on appeal, that we should do so now.[3] Mr. May contends that a combination of *Jones* and our circuit precedents forecloses adoption of the tender rule. Recall that *Jones* prohibits us from departing "from the usual practice under the Federal Rules" to make PLRA specific rules unless the PLRA expressly indicates otherwise. *See* 549 U.S. at 212. Mr. May argues that our usual practice is captured by our statement in *Murray v. Archambo*, 132 F.3d 609, 612 (10th Cir. 1998), that an "amendment that has been filed or served without leave of court or consent of the defendants is *without legal effect*." *See* Appellant's Reply Br. at 11 (emphasis added). Mr. May contends that because the SAC had not yet been accepted

---

[3] Although Mr. May does not raise forfeiture, we note that Mr. Segovia did not argue for the application of the tender rule to the district court. Generally, we "do[] not consider an issue not passed upon below." *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) ("[I]f the theory simply wasn't raised before the district court, we usually hold it forfeited."). But we retain discretion to consider such unraised arguments. *Singleton*, 428 U.S. at 121 (noting that federal appellate courts have discretion to decide "what questions may be taken up and resolved for the first time on appeal" based on "the facts of the individual case"); *see also Abernathy v. Wandes*, 713 F.3d 538, 552 (10th Cir. 2013) (holding that "the decision regarding what issues are appropriate to entertain on appeal in instances of lack of preservation is discretionary"). Here, it was the district court that first raised *Fong* in its decision dismissing the complaint, and so Mr. Segovia did not have an opportunity to raise the tender rule in response. Under these circumstances, we exercise our discretion to reach Mr. Segovia's argument and conclude that, assuming *arguendo* that *Fong* governs our analysis, the exhaustion requirement would nonetheless apply to Mr. May per the tender rule.

for filing when it was tendered, it had "no legal effect." *Id.* But *Murray* is distinguishable.

In *Murray*, the district court granted a motion to dismiss *an entire action* because the plaintiff filed the amended complaint without leave of the court or consent of the defendants. 132 F.3d at 610–612. The defendants argued that the dismissal was justified because the "amended complaint st[ood] in place of [the] original complaint." *Id* at 612. We concluded the district court erred because only a "properly filed" amended complaint could "supersede the original." *Id.* Despite the broad language in *Murray*, our holding there amounted to no more than that an improperly filed amended complaint does not have the legal effect of superseding the allegations in the original complaint for purposes of assessing whether dismissal is appropriate. Insofar as the phrase "without legal effect" was intended to mean anything more, it constitutes dicta. Unlike in *Murray*, Mr. May properly requested leave to file, but that leave was delayed in coming. And, as discussed above, a properly filed amended complaint may relate back to the original complaint for some purposes, including timing generally and statutes of limitation specifically. The timing of the claims, as opposed to the sufficiency of the allegations, was not before us in *Murray*, and our opinion there should not be construed as addressing the timing-allegation distinction. Thus, *Murray* does not preclude us from adopting the tender rule and we do so now.

Finally, both parties spill substantial ink on policy arguments. Mr. May argues that requiring a prisoner to dismiss his original complaint and file a new action would

create a procedural anomaly and incentivize inefficient use of judicial resources. Mr. Segovia contends that looking to the plaintiff's status when he initially filed the relevant claim would further the PLRA's policy goal of reducing meritless lawsuits, thereby enhancing judicial economy. *Jones* counsels us to disregard such arguments when they invite us to depart from the "typical" approach under the Federal Rules. *See* 549 U.S. at 216, 224–25. In response to similar policy arguments, the Supreme Court explained that "the judge's job is to construe the statute—not to make it better." *See Jones*, 549 U.S. at 216. "The judge 'must not read in by way of creation,' but instead abide by the 'duty of restraint, th[e] humility [to] function as merely the translator of another's command.'" *Id.* (first alteration in original) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 533–34 (1947)). Even if we agreed that it is inefficient to require released prisoners to refile unexhausted claims brought while in prison, our agreement would be irrelevant without "a clear reason to depart from our more typical claim-by-claim approach" under the Federal Rules. *Id.* at 224–25.

In summary, we conclude that Mr. May was a prisoner within the meaning of the PLRA when he brought his due-process claim, irrespective of which complaint first introduced his due process claim, and thus, he was required to exhaust any available administrative remedies as to that claim.

### B. The Availability of Administrative Remedies

"We review summary judgment decisions de novo, applying the same legal standard as the district court." *Tuckel v. Grover*, 660 F.3d 1249, 1251 (10th Cir.

21

2011) (quotation marks omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has identified a lack of a genuine issue of material fact, the nonmoving party has the burden to cite to "specific facts showing that there is a genuine issue for trial." *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Those specific facts must be supported by "particular parts of materials in the record," *see* Fed. R. Civ. P. 56(c)(1)(A); relying on "mere pleadings" is insufficient, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). We also review de novo the finding that Mr. May "failed to exhaust his administrative remedies." *Huggins v. Reilly*, 679 F. App'x 679, 681 (10th Cir. 2017) (unpublished) (citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

The PLRA does not impose an exhaustion requirement unless administrative remedies are "available." *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Although a defendant bears the burden of "proving that the plaintiff did not [exhaust his] administrative remedies," once the defendant has carried that burden, "the onus falls on the plaintiff to show that remedies were unavailable to him." *Tuckel*, 660 F.3d at 1254. Administrative remedies are deemed unavailable if, among other things, "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860; *see also Tuckel*, 660 F.3d at 1252–53 ("[W]hen a prison official inhibits an inmate

22

from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available.'"). There is no dispute that Mr. May failed to exhaust his administrative remedies; the only remaining question is whether those remedies were available.

The magistrate judge determined there was no genuine dispute of material fact as to whether administrative remedies were available to Mr. May because he did not "provide[] facts sufficient" to show that he "was, in fact, denied access to the administrative grievance process." Appellant's App. at 27. Mr. May argues he has raised a genuine issue of material fact because he "specifically asserted that" prison officials "intentionally" "black[ed] out the labels . . . of any outgoing mail scanned causing such mail to be returned undeliverable." Appellant's Br. at 23 (quoting Pl.'s Resp. to Def. Mot. for Summary Judgment at 2). As the nonmoving party, Mr. May must produce specific facts that show there is a genuine issue of fact as to whether (1) "the threat[, machination,] or intimidation actually did deter [him] from lodging a grievance" and (2) "the threat[, machination,] or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance." *Tuckel*, 660 F.3d at 1254. Mr. May has not raised a genuine issue of fact as to either prong.

Mr. May's sole argument is that he has "specifically asserted" that prison officials intentionally tampered with the mail processing system to render grievances undeliverable, and that he "made record of that" allegation by including it in response to Mr. Segovia's summary judgment motion. *See* Appellant's Br. at 23–24. Mr. May

23

provides no evidence to support this allegation beyond the allegation itself. He has not even alleged that he attempted to file a grievance about his internment in the SHU and it was returned as undeliverable. While Mr. May was in the SHU, he filed five grievances; he does not allege that any of them were returned as undeliverable. He also fails to make any such allegation as to the other twenty-four grievances he filed after he left the SHU and before he was released from custody, much less provide evidence to support that potential allegation. Mr. May further fails to offer any explanation as to how the grievance process was so broken as to dissuade him from filing his due process grievance but not enough to dissuade him from filing twenty-nine other grievances in the same time period.

Because nothing in the record indicates that the administrative process was unavailable to Mr. May, indeed, because there is evidence to the contrary, we concur with the magistrate judge's determination that there is no genuine dispute of material fact as to the availability of administrative remedies.

## III.    CONCLUSION

For the reasons stated, we affirm the judgment below.

24

17-1458, *May v. Segovia*
**BRISCOE**, J., concurring.

I concur in the judgment and join except for Part II.A.4 of the majority's well-reasoned opinion. I agree with the majority that the exhaustion requirement in the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, applies to May's procedural due process claim. While I would reach the same result, I would apply the Federal Rules of Civil Procedure to decide this case rather than the tender rule adopted by the majority.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under *Jones v. Bock*, 549 U.S. 199 (2007), as the majority succinctly explains, "the PLRA's imperative is properly understood to apply to *claims* and not entire actions," Maj. Op. at 8, and "courts should generally not depart from the usual practice under the Federal Rules [of Civil Procedure] on the basis of perceived policy concerns" when applying the PLRA, *Jones*, 549 U.S. at 212. In this case, as the majority highlights, the only claim at issue is May's procedural due process claim. Maj. Op. at 8–9. Therefore, under *Jones*, we should determine when May's procedural due process claim was "brought" under the PLRA.

I agree with the majority that May "brought" his procedural due process claim when he filed his initial complaint because, under Federal Rule of Civil Procedure 3, "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3; *see* Maj. Op. at 8-9. The next question, then, is whether later amendments to the initial

complaint alter this conclusion. I respectfully disagree with the majority's approach which assumes that the Second Amended Complaint introduces a new claim[1] and the majority's subsequent decision to apply the tender rule—a judge-made equitable principle found nowhere in the Federal Rules—to conclude that the "new" claim is subject to the PLRA's exhaustion requirement. Instead, I would apply the Federal Rules to determine whether the Second Amended Complaint relates back to the filing of the initial complaint.

Before applying the Federal Rules, it is helpful to recall the procedural history of this case. As is relevant here, the district court ordered May to cure deficiencies in his initial complaint resulting from his failure to use a standardized prisoner complaint form. May cured these deficiencies by refiling his initial complaint using the required form (the "First Amended Complaint"). Both the initial complaint and the First Amended Complaint named three defendants: George Santini, Frank Cordova, and the Federal Bureau of Prisons. Both the initial complaint and the First Amended Complaint stated that Segovia, as the administrator of the Federal Prison Camp, threatened May with "other action" if he refused to take Ivermectin. App. at 12, 24. Shortly after May filed the First Amended Complaint, the district court dismissed the Bureau of Prisons as a defendant, reasoning that suit against the Bureau was barred by sovereign immunity.

---

[1] The majority recognizes that the Second Amended Complaint is not a supplemental complaint within the meaning of Federal Rule of Civil Procedure 15(d). Maj. Op. at 17.

2

The record reflects that on May 27, 2015—90 days after May filed his initial complaint—Juan Segovia executed a sworn declaration in which he declared that he was responsible for the decision to place May in the Special Housing Unit. *See* App. at 72-74. In response to this declaration, and presumably the district court's dismissal of the Bureau of Prisons as a defendant, May filed the Second Amended Complaint, albeit without leave of court. The Second Amended Complaint contained nearly identical allegations as the initial complaint and First Amended Complaint but named only two defendants: Segovia and Cordova. Given this background, it seems clear that May, a pro se prisoner, never attempted to add any new claims when he filed his Second Amended Complaint, but rather sought only to identify the proper defendants as a result of subsequent developments in the district court.

Federal Rule of Civil Procedure 15(c) governs the relation back of amendments to the original pleadings. Under Rule 15(c),

> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
>   (A) the law that provides the applicable statute of limitations allows relation back;
>   (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>   (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within [90 days of the filing of the relevant pleading], the party to be brought in by amendment:
>     (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>     (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

3

(2) *Notice to the United States.* When the United States or a United States officer or agency is added as a defendant by amendment, the notice requirements of Rule 15(c)(1)(C)(i) and (ii) are satisfied if, during the stated period, process was delivered or mailed to the United States attorney or the United States attorney's designee, to the Attorney General of the United States, or to the officer or agency.

Fed. R. Civ. P. 15(c). Whether Rule 15(c)(1)(B) is satisfied "depends on the existence of a common core of operative facts uniting the original and newly asserted claims," *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (internal quotation marks omitted) (interpreting prior, but materially analogous, version of Federal Rule of Civil Procedure 15(c)), and we examine "what the party to be added knew or should have known," *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010), to determine whether Rule 15(c)(1)(C) is met.

On appeal, Segovia argues that the Second Amended Complaint relates back to the initial complaint because the amendments arose out of the same conduct, transaction, or occurrence set out in the initial complaint and he received adequate notice of the amendments. Segovia Resp. Br. at 18 & n.6. I agree that "the Second Amended Complaint asserts the same claims as those contained in the original complaint and is grounded on the same nucleus of operative facts." Segovia Resp. Br. at 18 (internal quotation marks and citation omitted). I also agree that Rule 15(c)'s notice requirements are satisfied, albeit for a different reason than the one advanced by Segovia. While Segovia briefly states in a footnote that Rule 15(c)'s notice requirements are satisfied in this case through Rule 15(c)(2), the record reflects that Rule 15(c)(1)(C)'s notice requirement is clearly satisfied. Based on his sworn declaration, Segovia received actual notice of the action within 90 days of the filing of the initial complaint, stated that he was

4

the responsible actor behind the decision to move May to the Special Housing Unit, and after he was named as a defendant he defended the merits of the action, without any claim or showing of prejudice.[2] Therefore, by satisfying all of the requirements of Rule 15(c)(1)(C), the Second Amended Complaint relates back to the filing of the initial complaint, and thus any claim in the Second Amended Complaint is subject to the exhaustion requirement in the PLRA. This approach is consistent with both the text of the PLRA and the Federal Rules of Civil Procedure, Segovia Resp. Br. at 17-20, and Segovia's overarching argument on appeal that a prisoner's status at the time he files the initial complaint in a civil action determines the applicability of the PLRA's exhaustion requirement. I would therefore affirm the district court on this alternative basis.[3]

The majority appears to disfavor this course because, as May argued on appeal, it may be inconsistent with the remedial purposes of the Rule 15(c).[4] *See* Maj. Op. at 14–15. Even if this were the case, the same concerns would apply to the tender rule which, as the majority explains, has its own origins in tolling the statute of limitations for plaintiffs. *Id.* at 18–19 (citing cases where courts tolled the statute of limitations upon the filing of a motion to amend rather than the operative filing date of the underlying

---

[2] Segovia waived any possible affirmative defense based on insufficient service of process. *See* Fed. R. Civ. P. 12(h)(1).

[3] "This court has discretion to affirm on any ground adequately supported by the record." *Feinberg v. Comm'r*, 916 F.3d 1330, 1334 (10th Cir. 2019) (internal quotation marks omitted).

[4] Nothing in the text of Rule 15(c) disfavors application of the relation back provision in the manner advocated.

5

pleading).  Accordingly, I am not convinced the tender rule, a judge-made equitable device employed to toll the statute of limitations, should be given precedence over the plain text of Rule 15(c).

Nonetheless, I agree with the majority that May was required to exhaust his procedural due process claim and failed to do so.  Therefore, for the reasons explained, I concur.