**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VICTOR CORNELL MILLER,

    Plaintiff - Appellant,

v.

KENNETH GOODYEAR, Case Manager,
in his individual and official capacity;
JESSICA SMITH, Warden's Assistant, in
her individual and official capacity;
KEVIN DUCKWORTH, Former Warden
of the Oklahoma State Penitentiary, in his
individual and official capacity; MARK
KNUTSON, Director's Designee,
Oklahoma Department of Corrections, in
his individual and official capacity; JOE
ALLBAUGH, Director of the Oklahoma
Department of Corrections, in his
individual and official capacity,

    Defendants - Appellees.

No. 19-7044
(D.C. No. 6:18-CV-00135-JHP-SPS)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Victor Cornell Miller filed this pro se prisoner civil rights action in state court against officials of the Oklahoma State Penitentiary (OSP) and Oklahoma Department of Corrections (ODOC). His complaint alleged the defendants violated his constitutional rights by unlawfully withholding his earned prison wages, by denying him access to the courts, by denying his right to free speech and to petition the government for redress of grievances, and by retaliating against him. The defendants removed the case to federal district court, which granted summary judgment in their favor. Mr. Miller appeals. We have jurisdiction, *see* 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

"Because we are reviewing a grant of summary judgment, we recite the facts in the light most favorable to [Mr. Miller] and we resolve all factual disputes and reasonable inferences in [his] favor." *Gutierrez v. Cobos*, 841 F.3d 895, 898 n.1 (10th Cir. 2016) (brackets and internal quotation marks omitted).

Mr. Miller is a prisoner in ODOC custody serving two life sentences without parole. The incidents described in his complaint occurred during his incarceration at the OSP.[1]

An ODOC regulation applicable to OSP inmates known as the "Systems of Incarceration" (OP-060107) establishes criteria for assigning class levels to inmates. *See* R. at 48-60. Under this regulation, each inmate classification level is associated

---

[1] On April 21, 2017, Mr. Miller was transferred to the Lawton Correctional Facility, where he now resides.

2

with corresponding privileges. Among these privileges, inmates classified at levels 2 through 4 are eligible to receive inmate pay (known as "gang pay"). At level 2, inmates receive $7.23 per month; at level 3, $10.84 per month; and at level 4, $14.45 per month.

To remain at a level or advance to a higher one an inmate must meet prescribed criteria including favorable evaluations in a "work, education, or program assignment." *Id.* at 49-50. Because inmate jobs or program assignments are not always available, the regulation includes an exception to the work-or-program requirement. That exception provides that "[i]nmates who are not employed due to the lack of facility job availability or not in assessed programs due to unavailability may promote in levels, *to include receiving the appropriate pay*, if all other level criteria is [sic] met." *Id.* at 51 (emphasis added).[2]

When Mr. Miller arrived at the OSP on December 15, 2008, he was assigned to inmate class level 2. Effective June 1, 2009, he was promoted to class level 3, and effective February 1, 2016, he was promoted to class level 4. He received these promotions even though he did not perform a qualifying job function while at OSP. He did not receive gang pay during these periods.

---

[2] In addition to this regulation, Mr. Miller cites several state statutes in support of his claim: Okla. Stat. tit. 57, § 138(B) (directing ODOC to develop policies concerning inmate employment, including "incentives for inmates to accept work assignments and jobs"); *id.* § 510(A)(8) (authorizing ODOC director to establish prison industries and to pay inmate wages); and *id.* § 549(A) (empowering State Board of Corrections to negotiate and apportion wages to inmates in prison industries).

On February 9, 2016, Mr. Miller made a request to staff concerning his entitlement to gang pay, seeking "immediate commencement of my pay grade at class level 3 including all back pay and accrued interest." *Id.* at 103. An OSP staff member responded that "you must have a job in order to be paid" and referred to an OSP "[e]xception[]." *Id.* As the defendants explain, this was a purported exception to the work-or-program exception noted above. The "exception to the exception" allegedly required that OSP inmates must "be employed to receive gang pay." Aplee Br. at 6.[3]

On February 19, 2016, Mr. Miller filed a grievance concerning the gang pay issue. His grievance was rejected as untimely, and he appealed to the Administrative Review Authority (ARA). An ARA manager rejected each of the OSP's reasons for denying the grievance. The manager's June 16, 2016, memorandum to the Warden stated:

> Upon further investigation by this office, it has been determined that the response to the offender's request to staff stating that the offender must have a job in order to be paid and that OSP operates under an exception to [OP-060107] is incorrect. Also, ruling the offender's grievance out of time from the date of incident is incorrect.

R. at 95.

---

[3] The defendants apparently were unable to produce this policy in support of their motion for summary judgment. *Compare* R. at 35 (acknowledging that "after thorough review, the exception could not be located"), *with id.* at 176 (arguing, without citation to the record, that OSP operated under this exception).

The memorandum instructed the Warden to pay Mr. Miller "in accordance with OP-060107 and his assigned level effective 2/01/16 to the present." *Id.* The OSP awarded Mr. Miller partial relief in the form of gang pay for the months of February, March, April and May 2016, reasoning these were the only months that had been timely covered by his grievance. It also changed its policy on gang pay, providing future gang pay to all inmates at OSP, including Mr. Miller, so long as they met all other relevant criteria.

Mr. Miller then grieved the failure to award him the full amount of back pay from the date of his arrival at OSP. The ARA rejected his grievance, reasoning that an award of partial relief could not be appealed.

Mr. Miller also filed a separate grievance charging that defendant Kenneth Goodyear had retaliated against him for filing his grievances by allegedly refusing to prepare and submit his transfer papers or to approve and issue his clothing requests. He alleges this grievance went unanswered.

## DISCUSSION

We review the grant of summary judgment de novo, applying the same legal standard as the district court. *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019). A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party's positions concerning material facts are established by citation to "particular parts of materials in the record." *May*, 929 F.3d at 1234 (internal quotation marks omitted); *see also* Fed. R. Civ. P.

5

56(c)(1)(A).  Here, those materials included a report prepared in accordance with *Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir. 1978) (en banc) (per curiam), which is "treated like an affidavit," *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (internal quotation marks omitted).

"We also review de novo the [district court's] finding that [Mr. Miller] failed to exhaust his administrative remedies."  *May*, 929 F.3d at 1234 (internal quotation marks omitted).  We liberally construe his pro se filings but do not serve as his advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### 1.  Procedural Due Process Claim

Mr. Miller's complaint asserted the defendants deprived him of a property interest in his prison wages without due process.  The district court granted the defendants summary judgment on this claim for two reasons.  First, it concluded Mr. Miller had no protected property interest in prison wages.  Second, it concluded he had an adequate post-deprivation remedy.  We affirm based on the second reason.

"To establish a procedural-due-process claim, a plaintiff needs to demonstrate not only the possession of a protected property interest but also a denial of an appropriate level of process."  *Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011).[4]  An appellant's failure to challenge the district court's finding that the process was adequate waives that issue on appeal.  *See id.*

---

[4]  Although Mr. Miller's complaint included passing references to substantive due process, *see, e.g.*, Complaint at 11, we agree with the district court that his claim sought recovery for an alleged violation of procedural due process.  A substantive due process claim would have required a very different presentation, including a

6

The district court stated:

> [U]nder the DOC Offender Grievance Process, . . . an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident.  If that is unsuccessful, he may submit a Request to Staff . . . within seven calendar days of the incident.  Plaintiff's delay in commencing his administrative remedies restricted the time period for which back wages could be considered.  *Because post-deprivation remedies were available, Plaintiff did not suffer a deprivation of his procedural due process rights.*

R. at 192 (citations omitted) (emphasis added).

Although Mr. Miller argues the partial relief he received through the grievance process was inadequate, he does not challenge the district court's findings that (1) due process required only an adequate post-deprivation remedy and (2) the grievance process provided him with a constitutionally adequate remedy.[5]  He has therefore waived his challenge to an independent and sufficient ground for granting summary judgment on his procedural due process claim.  We affirm on that basis.

_____

showing that the denial of prison wages under the OSP's policy lacked a rational relation to a legitimate penological interest.  *See Reedy*, 660 F.3d at 1275.

[5]  The district court attributed Mr. Miller's failure to obtain full relief to his failure to pursue the grievance process for over seven years after he arrived at OSP.  Our precedent supports this analysis.  *Cf. Myers v. Koopman*, 738 F.3d 1190, 1193-94 (10th Cir. 2013) (rejecting argument that a post-deprivation state remedy was "inadequate because it is now time-barred," reasoning that "[t]he Fourteenth Amendment guarantees the provision of an adequate remedy, but that remedy need not run in perpetuity.  [The plaintiff] *had* an adequate remedy.  He let it wither.  Due process has been duly satisfied").

## 2. Declaratory and Injunctive Relief

The district court denied Mr. Miller's requests for declaratory and injunctive relief, concluding he "failed to show how a declaratory judgment would settle any controversy or clarify any legal issues" and failed to show his entitlement to injunctive relief by demonstrating "a good chance of [his] being injured in the future." R. at 193. We agree. *See, e.g.*, *Green*, 108 F.3d at 1300 ("[A] plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured by the defendant in the future." (brackets and internal quotation marks omitted)).

Mr. Miller also argues that the violation of his civil rights should be considered "ongoing," and hence susceptible to "prospective" relief, so long as the defendants have not yet provided him with back pay. But this is just a damage claim in disguise. As we have already explained, Mr. Miller failed to establish a viable procedural-due-process claim that would support a monetary award against the defendants, whether couched in prospective or retrospective terms.[6]

## 3. Exhaustion of Remedies

The district court concluded Mr. Miller failed to exhaust his administrative remedies concerning his retaliation, access-to-courts, free speech, and redress-of-grievance claims. It noted that when his grievance concerning retaliation

---

[6] As a result of his grievance the prison began paying him gang pay every month going forward.

8

went unanswered, the grievance policy required him to send a grievance to the ARA complaining about the lack of response, which he failed to do.

An inmate is required to exhaust available administrative remedies before filing suit. *See* 42 U.S.C. § 1997e(a). Mr. Miller argues that because the prison authorities approved his transfer to a lower-security facility before the grievance procedure was complete, he received all the relief the grievance procedure could provide. He contends that he should therefore be excused from further administrative exhaustion because he had no "available" remedy left to pursue. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-60 (2016) (discussing requirement in Prison Litigation Reform Act that inmate exhaust "available" administrative remedies).

This argument lacks merit. Mr. Miller fails to show that the transfer provided him with all relief "available" through the grievance process. His grievance sought an investigation of Mr. Goodyear and appropriate corrective measures, not simply approval of his transfer. And to the extent Mr. Miller is arguing that the courts can provide him with additional relief that was "unavailable" through the grievance process—such as the $500,000 in damages his complaint sought for the alleged retaliation—the availability of such additional judicial relief does not excuse an inmate's failure to exhaust administrative remedies. *See, e.g.*, *Booth v. Churner*, 532 U.S. 731, 741 (2001). We therefore affirm the grant of summary judgment on his unexhausted claims.

### 4. Government Tort Act Claim

Mr. Miller's complaint also asserted that the alleged deprivation of gang pay violated the Oklahoma Governmental Claims Act (GTCA), Okla. Stat. tit. 51, §§ 151-172. The district court concluded the claim failed because Mr. Miller had failed to present a proper notice of claim before filing suit, as the GTCA requires. *See id.* § 156(A). Mr. Miller asserts he filed a notice of claim with the Office of the ODOC General Counsel. But the statute requires that the notice be filed with the "Office of the Risk Management Administrator of the Office of Management and Enterprise Services," who is then charged with notifying "the Attorney General and the agency concerned." *Id.* § 156(C).

Mr. Miller does not argue that his misdirected notice of claim substantially complied with the statute. Instead, he blames the misdirected notice on a prison official who allegedly provided him with incorrect information. *See* Aplt. Opening Br. at 11. Mr. Miller requested from this official the address of the "Oklahoma Department of Corrections Office of Risk Management" and the "Risk Management Officer for the Oklahoma Department of Corrections." R. at 164, 168. In response to each request, the official provided pages from a state directory that included addresses and other contact information for ODOC officials. These pages did not include information for an "ODOC Risk Management Officer." Thus, deprived of this necessary information, Mr. Miller asserts he filed his notice with the Office of the ODOC General Counsel instead.

10

Notably, the GTCA does not require that notice be sent to the "ODOC Office of Risk Management" or the "ODOC Risk Management Officer." Instead, it requires that the notice be filed with the Risk Management Administrator of the Office of Management and Enterprise Services. That state official serves risk management functions for *all* Oklahoma state entities, including the Department of Corrections. *See* https://omes.ok.gov/services/risk-management (visited July 15, 2020).

Mr. Miller asserts that "prison officials cannot fail to provide the correct information for completing [the GTCA's] exhaustion requirement and then claim failure to exhaust as a defense." Aplt. Opening Br. at 11. Mr. Miller's requests did not inform the prison officials that he sought information to comply with the exhaustion requirement. Although a prison official familiar with the organizational structure of Oklahoma state government might have deduced that he needed an address for the Oklahoma Risk Management Administrator of the Office of Management and Enterprise Services, the evidence does not suggest prison officials intentionally misled Mr. Miller when they responded to his requests. *Cf. Ross*, 136 S. Ct. at 1860 (administrative exhaustion process should be considered "unavailable" when prison officials thwart inmates through "misrepresentation"). He requested information about what he identified as an ODOC office or official, and they twice provided him with directory pages containing information pertaining to ODOC officials. In addition, after his first request came back with the "wrong" information, Mr. Miller could have altered his second request to match the precise statutory language, but he failed to do so. Under these circumstances, he shows no

11

good reason to excuse his lack of compliance with the GTCA's mandatory notice requirement.

**5. Class Certification and Appointment of Class Counsel**

The district court denied Mr. Miller's motion for class certification and appointment of counsel, reasoning that his underlying claims lacked merit. He presents a conclusory challenge to that ruling, *see* Aplt. Opening Br. at 10-11, but fails to show the district court erred. We therefore affirm the denial of those motions.

## CONCLUSION

The district court's judgment is affirmed.[7] We grant Mr. Miller's motion for leave to amend his opening brief.[8] The district court previously granted Mr. Miller leave to proceed on appeal in forma pauperis. We remind him of his obligation to continue making partial payments until the entire fee has been paid.

Entered for the Court

Allison H. Eid
Circuit Judge

---

[7] We reject Mr. Miller's additional assertion that genuine factual issues exist concerning his claims. The disputed facts he identifies do not preclude summary judgment, even when viewed as required in the light most favorable to him.

[8] The amended brief appears to be identical to his original appeal brief, except for the addition of an argument that the district court improperly granted qualified immunity to the defendants. Because our disposition does not depend on qualified immunity, it is unnecessary to further discuss that issue.

12